The NEW YORK STEAM COMPANY, Appellant, *v.* The FOUNDATION COMPANY, Respondent.

Real property — doctrine of lateral support — limitation thereof — excavations in street — public service corporations occupying streets — relative rights thereof.

The building code of New York city applies to adjacent property under private ownership, and has no application to excavations in a public street.

The doctrine of lateral support is limited to adjacent lands under private ownership, except that, while it requires the adjacent landowner to preserve the lateral support to a public highway, it does not require the municipality owning the highway to preserve the lateral support to the adjacent land. It has never been extended to questions arising between the underground occupants of a street under a franchise or license from the authorities in control.

Both parties to this action are domestic corporations. The plaintiff furnishing steam for heating and power purposes through pipes laid in the streets of the city of New York, defendant being engaged in the business of constructing foundations and retaining walls in that city. Plaintiff was acting under a franchise granted by the city. Defendant was acting under a revocable permit to construct a vault in front of certain premises in the city, but "in no case to extend it beyond the line of the curbstone or sidewalk." In constructing the vault and without any negligence on its part it damaged the pipes of plaintiff under the street, such injury being the inevitable result of the construction of its vault.

*Held, First.* That both parties were lawfully in the street, but the occupation by the plaintiff was prior, permanent and for a semi-public purpose, while that of the defendant was subsequent, temporary and for a purely private purpose. The plaintiff had an indestructible property right in the street but the defendant acted under a revocable license only.

*Second.* That the city owned the fee of the street in trust for the public, and having lawfully granted a franchise to use the street for a quasi-public purpose, it could not derogate from that grant, especially when making another for a mere private purpose.

*Third.* Whoever undertakes a work, not on his own land, that will inevitably injure the property of another, subjects himself to liability for the damages inflicted; and defendant, a late comer in the street and prosecuting a private enterprise, is liable for the damages caused by its interference with the plant of a public service corporation already in the street with the sanction of law.

*Western Union Tel. Co.* v. *Electric Light & Power Co., of Syracuse,* 178 N. Y. 325, distinguished.

*N. Y. Steam Co.* v. *Foundation Co.,* 123 App. Div. 254, reversed.

(Argued February 22, 1909; decided March 16, 1909.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered January 22, 1908, reversing a judgment in favor of plaintiff entered upon the report of a referee and granting a new trial.

This action was brought to recover the damages alleged to

have been sustained by the plaintiff on account of injuries inflicted by the defendant on its steam pipe line under the following circumstances, as found in substance by the referee before whom the action was tried:

Both parties are domestic corporations, the plaintiff furnishing steam for heating and power purposes through pipes, many miles in length, laid in the streets of the city of New York, and the defendant being engaged in the business of constructing foundations and retaining walls in that city. Since 1891 the plaintiff, under a franchise duly granted by lawful authority, has maintained in various public streets, and among others in New street, an iron pipe eight inches in diameter for the purpose of supplying steam to its customers, including the city. Said pipe is made of steel, in lengths of twenty feet, with a joint in every hundred feet, so constructed as to neutralize the effect of contraction and expansion caused by changes in temperature. On either side of the pipe and four inches distant therefrom is a vertical eight-inch brick wall extending one foot below and six inches above the pipe. Spanning the brick walls are wooden covers about three inches thick, with tar paper on top, and beneath the brick walls there are two inches of concrete. Between the brick walls and surrounding the pipe up to the wooden covers there is placed a material known as mineral wool to prevent the radiation of heat, which would cause waste and result in injury to other structures in the street. The pipe is anchored and the expansion joints fastened to the brick walls. Under each expansion joint and each anchorage point is a brick pier, and at every length of pipe another, supporting a roller upon which the pipe rolls as it expands and contracts. These piers are about fifteen inches square and a foot and a half deep, not carried down to rock, but resting on the earth. The lowest point to which any part of the structure extends, piers included, is about ten feet below the surface, and down to that point the soil of the street is fairly compact, but there was no evidence as to its character at a greater depth.

In addition to this structure of the plaintiff, which was built

under the supervision of the proper officers of the city, there was also located beneath the surface of the street a sewer, a Croton water main, a gas main and a conduit to carry electric wires.

In March, 1905, the defendant was employed by the Commercial Cable Company to build a vault beneath the sidewalk in the street in front of its premises, known as Nos. 24 to 28 New street, upon which it was erecting a building. The vault, walls included, was eighty feet long, eight and one-half feet wide, and eighteen or twenty feet deep. The outer wall was on the curb line, and, in preparing for the work, the defendant drove sheet-piling, consisting of planks four inches thick, just outside of the curb line to the same depth as the vault, "or deeper," but how near to the plaintiff's pipe does not appear. When the defendant began to drive the piling it was notified by the plaintiff that the result would injure its steam pipe structure and that it would hold the defendant liable for all damages ensuing.

The fee of New street is in the city of New York, which has an ordinance forbidding any vault "to be made which shall extend further than the line of the sidewalk or curbstone of any street." The Commercial Cable Company had a permit, granted pursuant to law by the commissioner of public works, for which it paid the usual sum of $2.00 per square foot involved, to construct the vault in front of its premises, but "in no case to extend it beyond the line of the curbstone or sidewalk." The permit was subject to revocation at any time by the commissioner, "when in his judgment the space occupied by the said vault or any portion thereof may be required for any public improvement, or upon any violation of any of the terms or conditions thereof."

The referee further found as follows: "*Fifteenth.* The driving and maintaining of said piling by the defendant and its operations in and about said premises caused the street in places to settle, causing the said pipe of the plaintiff to bend, break and leak, and making it necessary that the same and the construction around it should be removed, and that

ninety-two feet of new pipe (including one expansion joint and one service box) and the necessary construction around it should be laid, and that the same should be brought to the original level of the plaintiff's pipe, in the course of which work (which was done as soon as the condition of the street permitted) it was necessary for the plaintiff to open the street and replace the soil, and in and about said work the plaintiff necessarily expended the sum of eight hundred and seventy-six and 83/100 dollars for labor and materials, by which the plaintiff was damaged in the sum of seven hundred and twenty-five dollars, no part of which has been paid by the defendant to the plaintiff, though duly demanded."

" *Nineteenth*. The defendant was not guilty of any negligence in the construction of said foundation or of said vaults; or in the making or guarding of said excavations; or in the driving or maintaining of said sheet-piling ; or in the holding up or supporting of the soil of New street lying outside the curb ; or in any work or methods of work used by it for the purpose of or in connection with any of said details."

The referee found as a conclusion of law that the vault permit was valid and authorized the cable company and the defendant as its agent to make the excavation, drive and maintain the sheet-piling and construct the vault " as was done for it by defendant," but he directed judgment in favor of the plaintiff for the sum of $725 damages. Upon appeal to the Appellate Division the judgment was reversed by a vote of three to two upon the ground, among others, that there could be no recovery without proof of negligence. The plaintiff appealed to the Court of Appeals and its appeal is presented on the judgment roll, exceptions to the findings, etc., but without the evidence.

*James W. Hawes* for appellant. Vault permits are mere revocable licenses, are obtained for purely private purposes, and must yield to the public necessity or advantage. (*Patten* v. *N. Y. El. R. R. Co.*, 3 Abb. [N. C.] 306; *Coster* v. *Peters*, 5 Robt. 192; *Kingsland* v. *Mayor,* etc., 45 Hun,

198; *City of New York* v. *U. S. T. Co.*, 116 App. Div. 349; *March* v. *City of New York*, 69 App. Div. 1; *Deshong* v. *City of New York*, 176 N. Y. 475; *L. S. D. Co.* v. *City of New York*, 96 App. Div. 624; *Parish* v. *Baird*, 160 N. Y. 302; *Jorgensen* v. *Squires*, 144 N. Y. 280.) The defendant was liable under the general principles of the common law. (*Vil. of Haverstraw* v. *Eckerson*, 192 N. Y. 54; 124 App. Div. 18; *Riley* v. *C. R. J. Co.*, 110 App. Div. 787; *Farrand* v. *Marshall*, 21 Barb. 409; *Dalton* v. *Angus*, L. R. [6 App. Cas.] 740; *Booth* v. *R., W. & O. T. R. R. Co.*, 140 N. Y. 267; *Wilms* v. *Jess*, 94 Ill. 464; *Busby* v. *Holthams*, 46 Mo. 161; *O'Neil* v. *Harkins*, 8 Bush [Ky.], 650.) Section 22 of the Building Code applies. (*Marsh* v. *City of New York*, 69 App. Div. 1; *Sadlier* v. *City of New York*, 185 N. Y. 408; *Parish* v. *Baird*, 160 N. Y. 302; *Jencks* v. *Kenny*, 28 Abb. [N. C.] 154; *Dorrity* v. *Rapp*, 72 N. Y. 307; *Bernheimer* v. *Kilpatrick*, 53 Hun, 316; *M. R. Co.* v. *Mayor, etc.*, 89 Hun, 429; *Baxter* v. *N. Y. R. Co.*, 128 App. Div. 79.)

*Edwin D. Worcester* for respondent. The duties and liabilities of these parties were not regulated or affected by section 22 of the Building Code of the city of New York. That ordinance applies solely to the mutual relations of the owners or occupants of adjacent lots of land held in private ownership. (*Berry* v. *Todd*, 15 N. Y. S. R. 371; *Dorrity* v. *Rapp*, 72 N. Y. 307; *Sherwood* v. *Seaman*, 2 Bosw. 127; *Cohen* v. *Simmons*, 66 Hun, 634; *Johnson* v. *Oppenheim*, 55 Hun, 280; *Bernheimer* v. *Kilpatrick*, 53 Hun, 316; *McKenzie* v. *Hutton*, 141 N. Y. 8; *Ketcham* v. *Newman*, 116 N. Y. 422; *Jencks* v. *Kenny*, 28 Abb. [N. C.] 154; *Radcliffe* v. *Mayor, etc.*, 4 N. Y. 195.) The general common-law doctrine of lateral support affords no basis for plaintiff's contention. (*Dorrity* v. *Rapp*, 72 N. Y. 307; *Gillies* v. *Eckerson*, 99 App. Div. 153; *Bonami* v. *Backhouse*, El. Bl. & El. 622; 9 H. L. 503; *Trowbridge* v. *True*, 52 Conn. 109; *Gilmore* v. *Driscoll*, 122 Mass. 199; *Lasala* v. *Holbrook*, 4 Paige, 168; Washburne on Real Prop. [6th ed.] § 1296;

*Losee* v. *Buchanan*, 51 N. Y. 476; Dillon on Mun. Corp.
[4th ed.] 3991; *Radcliffe* v. *Mayor*, etc., 4 N. Y. 195.)
The doctrine that the owner of land abutting on a highway
owes a duty of lateral support to such highway has no appli-
cation to this case, nor does it serve to determine the mutual
duties and rights of these parties. ( *Vil. of Haverstraw* v.
*Eckerson*, 192 N. Y. 54; 124 App. Div. 18; *Finegan* v. *Eck-
erson*, 32 App. Div. 233; 26 Misc. Rep. 574; *Milburn* v.
*Fowler*, 27 Hun, 568; *Congreve* v. *Smith*, 18 N. Y. 79;
*Buckholz* v. *E. R. R. Co.*, 148 N. Y. 640; *Irvine* v. *Wood*,
51 N. Y. 224; *Kearney* v. *L. R. Co.*, L. R. [6 Q. B.] 693;
*Birge* v. *Gardner*, 19 Conn. 512; *Gray* v. *B. G. L. Co.*,
114 Mass. 149.)   Where a person, under a lawful and valid
permission from the city, makes an excavation in the soil of
the street, he owes no duty (apart from negligence and apart
from conditions contained in his contract with the city) of
supporting or shoring up a prior construction already exist-
ing in the street.   Such prior constructor must have notice or
knowledge of the latter constructor's intention so to excavate;
but, having such notice or knowledge, the prior constructor
must at his own expense support his construction. ( *Gerst* v.
*City of St. Louis*, 185 Mo. 191; *Jorgensen* v. *Squires*, 144
N. Y. 280;  *W. U. T. Co.* v. *E. L. & P. Co.*, 178 N. Y. 325;
*B. E. R. R. Co.* v. *City of Brooklyn*, 2 App. Div. 98; *I. R.
T. Co.* v. *Gallagher*, 44 Misc. Rep. 536; *Parish* v. *Baird*,
160 N. Y. 302; *Matter of B. U. E. Co.*, 105 App. Div. 111;
*Matter of N. Y. E. R. R. Co.*, 12 N. Y. Supp. 857.)

VANN, J.   The defendant cannot be held liable on the
theory that it was an ordinary trespasser, for it did not touch
the structure of the plaintiff and the referee found that the
vault could not have been built without driving sheet-piling in
the bed of the street just outside the curb line.   Such tempo-
rary use of the street beyond that line, therefore, was impliedly
authorized by the permit, as a necessary method of protecting
the rights of the public and shielding travelers from danger.
Implication, however, is always reasonable and hence it did not

4

include the right to injure structures already in the street by lawful permission.

Nor is the defendant liable because it violated any duty imposed on it by statute or ordinance, such as the Building Code, which, as was properly held below, applies to adjacent property under private ownership and has no application to excavations in a public street.

The rights of the parties are not controlled by the common-law doctrine of lateral support, as thus far applied by the courts. That doctrine is limited to adjacent lands under private owner-ship, except that while it requires the adjacent landowner to preserve the lateral support to a public highway, it does not require the municipality owning the highway to preserve the lateral support to the adjacent land. ( *Village of Haverstraw* v. *Eckerson*, 192 N. Y. 54 ; *Radcliff's Exrs.* v. *Mayor, etc. of Brooklyn*, 4 N. Y. 195.) It has never been extended to ques-tions arising between the underground occupants of a street under a franchise or license from the authorities in control. It does not apply to the case before us, because the plaintiff and the defendant's employer were not adjacent owners and the injury to the property of the former in the street was caused by what was done by the latter in the street and not on land adjacent thereto. Neither party was on its own land. We find no statute extending the doctrine so as to affect a controversy between a public service corporation, in occupation of a street under a franchise to lay a pipe line therein, and an abutting owner, acting under a lawful permit to construct a vault in the street under the sidewalk in front of his premises.

The case, therefore, is one of first impression and can be decided only by resorting to those principles of the common law that apply most directly to the facts and which are best calculated to do justice to the parties now before us and to those who may come before us in the future. .

The principles that we regard as controlling are, that no one can derogate from his own grant, and that every one must so use his own property as not to injure that of another.

Both parties were lawfully in the street, but the occupation

by the plaintiff was prior, permanent and for a semi-public purpose, while that of the defendant was subsequent, temporary and for a purely private purpose. The plaintiff had an indestructible property right in the street and the defendant, which for the time being was clothed with all the power of the abutting owner, acted under a revocable license only. The city owned the fee of the street in trust for the public and having lawfully granted a franchise to use the street for a quasi-public purpose, it could not derogate from that grant, especially when making another for a mere private purpose. No such power was reserved either expressly or impliedly. The question does not arise between two public service corporations, or between one of that class and the city, but between a public service corporation and an abutting owner with no absolute right in the street, so that there was no reservation such as sometimes arises by implication when the public is interested. The defendant had no greater right than the city gave the abutting owner, and the city could not give the latter the right to do anything in the street for a purpose wholly private, which, even if done without negligence, would injure the structure of the plaintiff lawfully in the street for a purpose partly public, without derogating from its own grant. The plaintiff had the superior right from the priority and the purpose of its occupation, and the city could not and did not grant any part of that right to the defendant or its employer. The vault license, therefore, did not authorize the defendant to injure, directly or indirectly, the plaintiff's property, even from necessity when prosecuting its work with due care.

The abutting owner, under its license, had a lawful right to build a vault in the street under the sidewalk, and that also was property, or a property right, although not indestructible as to the city. When it came to the work of construction, through the defendant, its agent, it found the property of the plaintiff already in the street pursuant to lawful authority, and in use to furnish many human beings with a necessary of life. Under the principle, *sic utere tuo ut alienum non lædas,* it was bound to use its right so as not to injure that

property.  It owed the plaintiff a legal duty not to injure its plant without making compensation.  It could not disturb an existing structure lawfully in the street without becoming liable for the damages caused thereby.  The defendant rested under the same obligation, and hence proceeded at its peril. Good intentions have no bearing, for the law "does not so much regard the intent of the actor as the loss and damage of the party suffering."  Even the exercise of due care did not relieve the defendant from the obligation springing out of the fundamental right of every person to enjoy his own property without interference therewith by the use made of the property of another.

When the fifteenth and nineteenth findings are read together it is clear that the nature of the work done by the defendant in driving, maintaining and removing its piles was such as could not be done at all, even with due care, without injuring the structure of the plaintiff.  While the precise cause of the injury was not found by the referee, it is evident from what he did find that it was owing, as he stated in his opinion, to " the subsidence of the soil of the street."  The bottom of the vault was so much deeper than the bottom of the plaintiff's structure that compression of the soil caused by driving the piles and expansion caused by pulling them out, apparently resulted in the settling of the earth and the sagging of the pipe, which was the source of the damages sustained. As the referee declared, it " was the inevitable result of the construction of its vaults " by the defendant.  Whoever undertakes a work, not on his own land, that will inevitably injure the property of another, subjects himself to liability for the damages inflicted.  The defendant, a late comer in the street and prosecuting a private enterprise, was properly held liable by the referee for the damages caused by its interference with the plant of a public service corporation already in the street with the sanction of law.  The defendant took its license subject to the burden of paying for the injury caused by the work done thereunder.  Any other rule might result in the utter destruction of public utility lines without liability.

Nothing decided in a late case relied upon by the defendant is in conflict with these views. ( *Western Union Telegraph Co.* v. *Electric Light & Power Co. of Syracuse*, 178 N. Y. 325, 331.) That case was brought by one public service corporation against another and also against the city which had granted a franchise to each to build a subway in one. of its streets. Neither grant was exclusive or for a private purpose. The real question was whether the public service corporation with the later grant could so locate its subway under the direction of the proper city officer as to make access to the plant of the corporation with the earlier grant less convenient and more expensive. The case turned on a strict construction of the grant in the interest of the public, and we held that all that the owner of the earlier franchise could lawfully demand "is that its structure shall not be unreasonably interfered with." The case now before us does not involve the rights of the city nor the interest of the public, for it is a controversy between two underground occupants of a street, one there earlier, permanently and for a public purpose and the other there later, temporarily and for a private purpose.

We think that the judgment rendered by the referee was right, and we thank him for his able opinion, which we have followed in most respects, and which, fortunately, has been reported. (123 App. Div. 254, 265.)

The order of the Appellate Division should be reversed and the judgment entered upon the report of the referee affirmed, with costs in both courts.

Cullen, Ch. J., Gray, Edward T. Bartlett, Haight, Willard Bartlett and Chase, JJ., concur.

Ordered accordingly.