HENRY M. SUSSWEIN, as Administrator, etc., of ROSA HERMANN
   SUSSWEIN, Deceased, and OSCAR HERMANN, Respondents,
   Appellants, *v.* BRADLEY CONTRACTING COMPANY, Appellant,
   Respondent.

First Department, November 22, 1918.

Municipal corporations — city of New York — action by owners of
   premises against subway contractor for damages to buildings
   caused by the defendant excavating below their foundations —
   absolute rule of liability for lateral support applied — application
   of section 22 of the Building Code of the city of New York — right
   of abutting owner on public street to easement for lateral support
   — liability of contractor to owners of buildings on abutting land
   under provisions of contract with city — damages — instructions
   to jury — when special findings necessary in order to sustain
   recovery under verdict for gross sum.

In an action by owners of land in the city of New York located at the north-
   east and southeast corners of two streets running north and south and east
   and west, and intersecting at substantially right angles, against a defend-
   ant, alleged to have been engaged under a contract with the city of
   New York in constructing a subway in the street extending east and west,
   it appeared that at the time of the commencement of the action the city
   had not opened the east and west street for public travel and the only
   access to the plaintiffs' premises was from the north and south street;
   that at the time of the commencement of the work by the defendant thr
   plaintiffs had erected buildings on their premises which were substantially
   inclosed; that the defendant excavated the entire surface of the east and
   west street exposing the walls of plaintiffs' buildings down to the founda-
   tions and they left a ledge of earth on either side from seven to nine feet
   in width and continued the excavation between these ledges to a depth of
   about twenty feet below the foundations of plaintiffs' buildings, causing
   them to move into the street from two to three inches at the bottom, and
   from five to six inches at the top, and also causing the walls to crack,
   and that there had been no perceptible settling or moving of the buildings
   prior to the time the defendant excavated the street.

*Held,* that the court properly instructed the jury that the defendant was
   under an absolute duty to protect plaintiffs' buildings from injuries from
   the excavation.

Section 22 of the Building Code of the city of New York, as then in force,
   requiring a person causing an excavation to be made on a lot in said city,
   to a depth of more than ten feet, to protect buildings on an adjacent lot,
   and the like statutory provisions on which it is based relate only to
   excavations on lots and do not apply to excavations in a public street.

The law is well settled that regardless of who owns the fee of a public street, an abutting owner thereof has an easement for lateral support, of which he cannot be deprived without just compensation, and that when the fee is acquired for public street purposes, it is held by the municipality, not in absolute ownership, but in trust for the use of the people of the State, and subject to such easements for lateral support, as well as to easements of light, air and access, and that such damages cannot be considered and an award made therefor in the ordinary proceeding for acquiring the land for public street purposes.

Upon this theory, the defendant interfered with and trespassed upon the easements of the plaintiffs, and it cannot obtain immunity therefor by showing that the city directed it to do so.

It is upon this theory of easements for lateral support that the rule of absolute liability in such cases has been applied and sustained against contractors.

Since the plaintiffs disclaimed any cause of action based on the provisions of the contract between the defendant and the city, that the contractor should be liable to the owners of buildings on abutting land for all physical injuries to the property, regardless of whether the city would be liable to them therefor, and the contractor expressly agreed to pay such damages to the abutting owners, it is not decided that liability may be predicated upon said provisions, but it seems that they would authorize an action against the contractor, at least if the city would be liable.

The court properly left it to the jury to determine whether the excavation made by the defendant in the street caused the buildings thus to move and crack, with instructions to make an award for such damages as were caused by the excavation.

Since the jury were not instructed to report any special findings, it cannot be determined from the record on what theory the award for permanent damages was made, or whether the verdict includes any award therefor.

Since the evidence shows that the cost of reconstruction was less than the diminution in value, the jury should have been instructed that the plaintiffs were entitled to recover the reasonable cost of restoration only, and it should not have been left to the jury to award, in their discretion, either the depreciation in value or the cost of restoration.

The plaintiffs had a right to improve their land by the erection of buildings thereon, and were under no obligation to delay the work pending the construction of the subway and the opening of the street to the public. They were within their rights in proceeding with the erection of their buildings before the street was improved, but they took the risk with respect to the time it would be improved and open for public use, and had no enforcible right, at least not as against the defendant, to have it opened for public travel at any particular time.

If special findings had been required, part of the recovery could be sustained, but since the only verdict is for the gross sum and an erroneous rule of damages was applied in part, the judgment must be reversed and a new trial granted.

First Department, November, 1918.      [Vol. 184.

Appeal by the defendant; Bradley Contracting Company, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 8th day of February, 1917, upon the verdict of a jury for $14,000, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

Appeal by the plaintiffs, Henry M. Susswein, as administrator and another, from so much of the order entered on the 8th day of February, 1917, as denies their motion to amend the verdict so as to include interest.

*John Conway Toole* of counsel [*James R. Deering* with him on the brief; *Deering & Deering,* attorneys], for the plaintiffs.

*George Edwin Joseph* of counsel [*I. V. Werbin* with him on the brief; *Frederick L. C. Keating,* attorney], for the defendant.

Laughlin, J.:

The recovery was for damages to buildings owned by the plaintiffs and for loss of rentals thereof, alleged to have been caused by the defendant in constructing a subway in Kenmare street, in the execution of a contract made between it and the city of New York on the 27th day of June, 1907. Kenmare street runs easterly and westerly intersecting Mott street at substantially right angles, and the city acquired title thereto for public street purposes on the 1st day of May, 1907. Prior to that time the premises so acquired had mainly been occupied by buildings, some of which had been destroyed by fire, and others were torn down soon after the city acquired title. Prior to the time the city acquired title to Kenmare street and at the time of the commencement of this action, the plaintiffs owned the premises which are now at the northeasterly and southeasterly corners of Kenmare and Mott streets. In June, 1907, they had consulted an architect with a view to erecting buildings thereon and he prepared plans and specifications in the month of July, 1907, for the erection on each parcel of a six-story tenement building, to accommodate thirty families with stores underneath on Mott street and four stores on Kenmare street, and cellars.

The construction work of the buildings was commenced in the month of August. The city at that time had not opened Kenmare street for public travel and the only access to the premises was from Mott street. The surface of Kenmare street between the plaintiffs' premises then consisted of ruins of the cellars and buildings that had been burned and the surface was considerably below Mott street. In the month of October or November, 1907, the defendant in the performance of its contract work began excavating Kenmare street between Mott and Elm streets, and the evidence tends to show that it began excavating between the premises of the plaintiffs in November of that year. At that time the foundations and walls of the plaintiffs' buildings had been erected and it is to be inferred that the buildings were substantially inclosed. The foundations of the buildings were placed on virgin sand at a depth of about twenty feet below the surface of Mott street. The defendant excavated the entire surface of the street exposing the walls of plaintiffs' buildings down to the foundations and then left a ledge of earth on either side from seven to nine feet in width and continued the excavation between those ledges to a depth of about twenty feet below the foundations of plaintiffs' buildings. As the excavation made by the defendant proceeded below the foundations of the plaintiffs' buildings it was observed that the walls of the buildings commenced to crack and the buildings began to settle unevenly, both tilting towards Kenmare street, and although efforts were made by the defendant later on to support the walls by bracing, shoring and underpinning, before the work of the defendant was completed the entire buildings had moved into Kenmare street from two to three inches at the bottom and from five to six inches at the top. The exterior walls had been erected perpendicularly on the building line of Kenmare street. There had been no perceptible settling or moving of the buildings prior to the time the defendant excavated the street. The amended complaint contains allegations appropriate to a cause of action on the theory of negligent construction, and also appropriate to a cause of action on the theory of absolute liability for interference with the lateral support of the buildings. It is claimed that the action was tried on the theory of negligence. Evidence appropriate to each theory was

received but the court instructed the jury that the defendant was under an absolute duty to protect plaintiffs' buildings from injuries from the excavation and declined to instruct the jury that there could be no recovery unless the defendant was guilty of negligence. To these rulings exceptions were duly taken.

It is contended on behalf of the defendant, in effect, that the only theory on which absolute liability can be predicated is the violation of section 22 of the Building Code of the city of New York, as then in force, which, so far as material, requires a person causing an excavation to be made on a lot in the city of New York to a depth of more than ten feet to protect buildings on an adjacent lot. If that were the only theory of absolute liability, it may well be that a contractor or subcontractor would not be liable and that the liability is limited to the person *causing* the excavation to be made, and it has been so held (*Bloomingdale* v. *Duffy*, 71 Misc. Rep. 136; affd., 146 App. Div. 879. See, also, *Gordon* v. *Automobile Club of America*, 101 Misc. Rep. 724; affd., on opinion of Greenbaum, J., 180 App. Div. 927; *Kelby* v. *New York Municipal Railway Corp.*, 182 id. 885); but said section of the Building Code and the like statutory provisions on which it was based relate only to excavations on lots, and they do not apply to excavations in a public street. (*New York Steam Co.* v. *Foundation Co.*, 123 App. Div. 254; affd., on this point, 195 N. Y. 43, 50; *Matter of Rapid Transit Railroad Commissioners*, 197 id. 81, 101.) It is now, however, the established law of this State that regardless of who owns the fee of a public street, an abutting owner thereon has an easement for lateral support, of which he cannot be deprived without just compensation, and that when the fee is acquired for public street purposes, it is held by the municipality not in absolute ownership but in trust for the use of the People of the State and subject to such easements for lateral support as well as to easements of light, air and access and that such damages cannot be considered and an award made therefor in the ordinary proceeding for acquiring the land for public street purposes. (*Matter of Rapid Transit Railroad Commissioners, supra; Lincoln Safe Deposit Co.* v. *City of New York*, 210 N. Y. 34; *Matter of City of New York* [*New Street*], 215 id. 109; *Matter of City of New*

*York* [*Ely Avenue*], 217 id. 45, 58; *People ex rel. City of New York* v. *New York Railways Co.,* Id. 310.)   Upon this theory the defendant, appellant, interfered with and trespassed upon the easements of the plaintiffs and it cannot obtain immunity therefor by showing that another directed it so to do.   It is upon this theory of easements for lateral support that the rule of absolute liability *in such cases* was applied and sustained against contractors in *Bollton* v. *New York Contracting Co.* (156 App. Div. 900); *Jackson* v. *New York Contracting Co.* (162 id. 909), both of which were affirmed by this court without opinion.   The *Bollton* case was disposed of in the Court of Appeals in connection with the *Lincoln Safe Deposit Co. Case, supra* (209 N. Y. 587), and counsel for the defendants in the *Jackson Case* (*supra*) was allowed to intervene and file a brief in the *Lincoln Safe Deposit Co.* case in which the doctrine of abutters' easements for lateral support *in such cases* even where the city owns the fee was reiterated.   The learned trial court was, therefore, right in applying the rule of absolute liability for lateral support.

By the terms of the contract between the defendant and the city it was expressly provided that the contractor should be liable to the owners of buildings on abutting land for all physical injuries to the property regardless of whether the city would be liable to them therefor, and the contractor expressly agreed to pay such damages to the abutting owners. Although counsel for the plaintiffs expressly waived any claim of liability based on the *contract,* it would seem that these provisions of the contract would authorize an action against the contractor, at least if the city would be liable. (See *Schnaier* v. *Bradley Contracting Co.,* 181 App. Div. 538; *Continental A. P. Co.* v. *Hudson & Manhattan R. R. Co.,* 143 id. 338; *Glens Falls Gas Light Co.* v. *Van Vranken,* 11 id. 420.)   Counsel for the defendant quotes what purports to be a provision of the contract, not introduced in evidence, tending to show an agreement on the part of the city with the contractor to acquire the necessary real estate, rights of way, or other rights including easements, that might be required for the purpose of constructing the subway, and he argues therefrom that it was the duty of the city to acquire any rights of the plaintiffs that might be invaded; but that is doubtful in

view of the provisions of the contract to which reference has been made and another provision of the contract by which the contractor covenanted and agreed with the city that the work could be done without endangering the foundations or walls or other parts of adjacent buildings or structures, and that the contractor would, at its own expense, make good any damage done to such foundations, walls and other parts of adjacent buildings or structures. In view of the fact that the plaintiffs disclaimed any cause of action based on the contract, we do not decide that liability may be predicated thereon and merely draw attention thereto to the end that the trial court may know that the point was not presented for decision.

With respect to the permanent damages claimed by the plaintiffs one witness testified that the cost of rebuilding the front walls to conform to the building line and to make them perpendicular would be $12,000 and another $13,300 and that the work would require about three months for each building. Another witness testified that the depreciation in value of the premises, owing to this condition of the walls, would be more than the cost of rebuilding the walls. There is also testimony to the effect that it would be difficult, if not impossible, to sell the premises with the walls in their present condition. There is no other evidence with respect to depreciation in value. The court properly left it to the jury to determine whether the excavation made by the defendant in the street caused the buildings thus to move and crack, with instructions to make an award for such damages as were caused by the excavation. The court instructed the jury on the question of permanent damage to the freehold that the plaintiffs were entitled to recover the difference between the value of the property as it would have been, had the walls not been cracked or moved in consequence of the excavation, and as it was; and that if they were unable to determine such difference in value from the evidence then they should consider what amount should be allowed to the plaintiffs to restore the buildings to proper condition, and make an award therefor. The jury were not instructed to report any special findings and, therefore, it cannot be determined from the record on what theory the award for per-

manent damages was made, or whether the verdict includes any award therefor.    Since the evidence shows that the cost of reconstruction was less than the diminution in value, the jury should have been instructed that the plaintiffs were entitled to recover the reasonable cost of restoration only and it should not have been left to the jury to award in their discretion either the depreciation in value or the cost of restoration.    (*Hartshorn* v. *Chaddock*, 135 N. Y. 122.)    The plaintiffs claim that their buildings would have been fully completed and ready for occupancy by tenants about the month of February, 1908, were it not for the injuries to the buildings and interference with the construction thereof caused by the excavation and the manner in which the defendant conducted the work; that no part of the buildings was ready for occupancy until the month of October, 1908; that the buildings in their entirety were not ready for occupancy until 1910; that the first tenants were permitted to enter without a certificate having been obtained from the tenement house department, but pursuant to an understanding with the commissioner and the certificate for occupancy was not granted until January 15, 1910; and that the defendant was responsible for such delays.    The subway was not completed at this point and the surface of the street paved and opened for public travel until sometime in 1911.    The plaintiffs undoubtedly had a right to improve their land by the erection of these buildings thereon and they were under no obligation to delay the work pending the construction of the subway and the opening of the street to the public.    There was evidence tending to show the rental value of the buildings and tending to show that the use of that part of the buildings, access to which was had from Kenmare street, was interfered with and delayed by the construction work of the defendant. The certificate of occupancy was withheld by the tenement house department owing to the fact that ingress and egress could not be had through Kenmare street.    The court left it to the jury to determine and award the plaintiffs the loss of rentals caused by the defendant, not only with respect to the injuries to the buildings and interference with construction, but owing to the obstruction to the entrances from Kenmare street.    Counsel for the defendant strenuously contends that

inasmuch as Kenmare street had not been opened for public use the plaintiffs were not entitled to recover damages predicated on the defendant's interference with and obstructions of access to the buildings from that street, and duly excepted to the rulings of the court allowing any recovery on that theory. For aught that appears a large part of the recovery may have been for such interference and obstructions. The plaintiffs, in proceeding with the erection of their buildings, before Kenmare street was improved, were within their rights but they took the risk with respect to the time it would be improved and opened for public use. They had no enforcible right, at least not as against the defendant, to have it opened for public travel at any particular time. It was not opened as a public street until after all of the damages for which a recovery is sought herein had occurred. There was no basis on which the jury could find and they were not instructed to find when the city would have improved and opened this street but for the subway construction which was not a street use. This is one of those cases in which special findings should have been required and had that been done part of the recovery doubtless could have been sustained, but since the only verdict is for a gross sum and an erroneous rule of damages was applied in part the judgment cannot be sustained.

It follows, therefore, that the judgment and order should be reversed and a new trial granted, with costs to defendant, appellant, to abide the event.

Clarke, P. J., Dowling, Page and Merrell, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event; order appealed from by plaintiffs affirmed.