WILLIAM J. KUKKUK, Executor, Appellee, v. CITY OF DES MOINES, Appellant.

**EMINENT DOMAIN:** Compensation—Loss of Lateral Support. When, in eminent domain proceedings, part of an entity of land is condemned for street purposes, the property owner may show that the remaining entity will, to its material damage, be deprived of lateral support, consequent on the fact that the city will necessarily be compelled to *excavate* the condemned strip of land, in order to use it as a street. (*Arguendo*, it appears that the property owner will conclusively waive such element of damage if he *fails* to interpose it in the condemnation proceedings.)

**EMINENT DOMAIN:** Compensation—Measure of Damages. Principle reaffirmed that, in eminent domain proceedings, the measure of damages for the condemnation of part of an entity is the difference between the fair market value of the entity *before* and *after* condemnation and taking, measured in view of the purpose for which the condemned tract is to be used,—excluding, of course, all elements of benefits.

**WITNESSES:** Examination—Nonresponsive Answer. A *nonexamining* party may not object to an answer as nonresponsive.

**EVIDENCE:** Opinion—Facts as Basis. A witness has a right to detail the basic matters to which he gave consideration in making an estimate of damages.

**TRIAL:** Reception of Evidence—Waiver of Defect. A party may not pass an objectionable question, speculate on the possible answer thereto, and then interpose a dragnet objection and base reversible error on an adverse ruling.

**TRIAL:** Reception of Evidence—Failure to Object. Failure to object to improper answers or to move to strike the same precludes review on appeal.

**EMINENT DOMAIN:** Compensation—Present and Future Damages. On the issue of compensation for part of an entity of land condemned for a street, which leaves the *remaining* entity without lateral support, evidence is admissible as to the extent the unsupported banks would cave or slough off.

**EMINENT DOMAIN:** Compensation—Trees and Shrubbery. The value of trees and shrubbery on the condemned land is a proper side light on the larger issue of the value of the entity of land *before* and *after* the condemnation and taking.

**EMINENT DOMAIN:**   Compensation—Present and Future Conditions
9  **of Property.**  On the issue of compensation for condemned lands,
due consideration must be given to the conditions and surroundings
of the remaining lands (1) at the time of condemnation, and (2)
after the condemned strip has been properly appropriated to the
particular use for which taken.

**EMINENT DOMAIN:**   Compensation—Availability for Other Purposes.
10  On the issue of compensation for condemned lands, the landowner
may show the immediate availability of his land for other pur-
poses than those to which he is at the time devoting it.

*Appeal from Polk District Court.*—HUBERT UTTERBACK, Judge.

MARCH 14, 1922.

PROCEEDINGS for the condemnation of a tract of land for
purposes of a street in the city of Des Moines. The defendant
appeals from the award of the jury.—*Affirmed.*

*W. E. Miller, Henry H. Griffiths, Chauncey A. Weaver,* and
*Russell Jordan,* for appellant.

*Parrish & Parrish,* for appellee.

FAVILLE, J.—One Richard Guenther was the owner of the
property in question. Pending litigation, Guenther died, and
the appellee, as his executor, has been substituted in this action.

1. EMINENT DO-   In the opinion we will refer to the appellee as
MAIN: compen-   though he were the original owner.
sation: loss of
lateral support.       In August, 1919, proceedings were had for
the condemnation of a strip of ground 25 feet wide and 427
feet long, lying on the south side of a 6-acre tract owned by
the appellee, for the purpose of opening Washington Street
in the city of Des Moines, from East Thirty-third Street to
East Twenty-ninth Street. An award was made by the sheriff's
jury, and an appeal taken to the district court, where the case
was tried twice; and from the final verdict, awarding appellee
$1,500, this appeal is prosecuted.

I.   Appellant's argument is largely devoted to the conten-
tion that the court erred in not limiting appellee to proof of the
proper measure of damages. It appears from the evidence that

there has never been any street established on the south side of appellee's property, and that the said property is so situated that the establishment of the street to be opened under the said condemnation proceedings will necessarily result in the construction of a substantial excavation along a portion of appellee's property. The appellee offered proof with regard to the necessary effect upon the remaining portion of appellee's tract of land, by reason of the making of said excavation for said street. Appellant's contention is that it was error to permit the appellee to prove the effect that would be produced upon the remaining portion of the tract by the construction of the excavation.

Evidence was offered, tending to show that such construction of said street would necessarily result in causing the soil upon the remaining portion of appellee's tract adjacent to said street to slide off, unless a retaining wall was built. In other words, appellee proved that injury would result to the remaining portion of his tract by the necessary loss of lateral support in the construction of the street for which the condemned strip was taken.

Appellant's contention is that this permitted a merging of two separate and distinct proceedings, one for the condemnation of land, and the other for damages caused by a change in the grade of a street. It is argued that condemnation is provided for by Sections 880, 884, and 999 of the Code, and that damages to property by reason of a change in the grade of any street are to be determined by Sections 785 to 790, inclusive, of the Code; and that both remedies are not available in the condemnation action.

Proceedings for the condemnation of a tract of land for the original establishment of a street differ materially, under our statute, from proceedings for damages for a change in the grade of an established street. We are not concerned, in this case, with any question as to the liability of a city for establishing a grade on an already existing street, nor for changing a street grade that had once been established. We are dealing only with the original taking of property for the establishment of a street, where none has heretofore existed.

The real crux of the inquiry is whether or not, in a con-

demnation proceeding for the taking of property for the establishment of a street, it is proper to take into consideration the condition of the remaining portion of the tract, after the condemned strip has been taken and appropriated to the purpose for which it is taken. In other words, as in the instant case, where the strip is taken for the original establishment of a street, and the evidence shows that, in order to properly use the same for street purposes, a substantial excavation will be required to be made, can said fact be taken into consideration in determining the damages that the property owner will suffer to the remaining portion of the tract? Or more specifically, can the depreciation, if any, to the remaining portion of said tract, because of the loss of lateral support that will necessarily result thereto from the proper construction of the contemplated street, be considered in awarding the damages in the condemnation proceedings?

In the first place, it is obvious that Section 785 and the sections following have to do wholly with a change in the *established grade* of an existing street. Said Section 785 provides as follows:

"When any city or town shall have established the grade of any street or alley, and any person shall have made improvements .on the same, or lots abutting thereon, according to the established grade thereof, and such grade shall thereafter be .altered in such a manner as to damage, injure, or diminish the value of such property so improved, said city or town shall pay to the owner of such property the amount of such damage or injury."

It is apparent from the very language of said section that it contemplates a change in "an established grade that shall thereafter be altered in such manner as to injure or damage" adjacent property. No such situation exists where no street has ever been opened, and where no grade has ever been established. In the instant case, appellee could have no recourse to such statute for any injury that might result to his property by reason of the original establishment or construction of said street. This proceeding is in no way an "alteration of an established grade." There never has been any street, and there

never has been any grade on the south side of appellee's property.

Unless we are to make an exception in the case of streets in cities and towns, it must be held that, in condemnation proceedings, it is proper to take into consideration the effect which

2. EMINENT DO- the proper use of the condemned strip will have
MAIN: compen- upon the residue of the tract from which it is
sation: measure
of damages. taken. This is the general rule in proceedings in eminent domain. In proceedings of this kind, the measure of damages is generally the difference in value of the entire tract before the taking of the condemned portion and its value after the taking, having in consideration the purposes for which the condemned tract is to be used, and disregarding benefits. In repeated decisions since *Sater v. Burlington & Mt. P. P. R. Co.,* 1 Iowa 386, we have recognized this rule. It is so familiar and so well established that we do not need to collect the authorities to sustain it.

We have also recognized the rule that damages are not limited to the value of the land taken, but include such damages as result proximately from the use for which it is taken. *Kucheman v. C. C. & D. R. Co.,* 46 Iowa 366; *Dreher v. I. S. W. R. Co.,* 59 Iowa 599.

The value of the tract "after the taking" is to be determined by the condition in which the property will be, assuming that the condemned portion is properly used for the purpose for which it is taken. For example, if the condemned tract is to be used for railroad purposes, the value of the tract after the taking is to be determined by giving consideration to its value as affected by the use to which the condemned strip is dedicated, without, of course, considering any benefits that may accrue by reason of the improvement; and hence consideration is to be had of the manner in which the property will be affected by the noise, smoke, and other things incidental to the operation of trains upon the appropriated land. *Wilson v. Des Moines, O. & S. R. Co.,* 67 Iowa 509.

In a general way, it may be said that all matters, either present or future, that necessarily and proximately affect the market value of the tract by the appropriation and proper use of the condemned portion for the purpose for which it is taken,

may be considered in assessing damages. *Miller v. Keokuk & D. M. R. Co.*, 63 Iowa 680, 685; *Hileman v. Chicago G. W. R. Co.*, 113 Iowa 591; *Doud v. Mason City & Ft. D. R. Co.*, 76 Iowa 438; *Richardson v. City of Centerville*, 137 Iowa 253, 255; *Bennett v. City of Marion*, 106 Iowa 628; *Wissmath Pkg. Co. v. Mississippi R. P. Co.*, 179 Iowa 1309, 1327; *Ellsworth & Jones v. Chicago & I. W. R. Co.*, 91 Iowa 386, 391; *Watters v. Platt*, 184 Iowa 203, 208.

Applying the general rules to the instant case, it is obvious that the appellee was entitled to show to the jury the condition in which his property would be after the condemned strip had been appropriated and used for the purpose for which it was taken.

If it had been taken for a cemetery, a schoolhouse, or a railroad, it would be proper to consider the value of the tract, with the assumption that the condemned portion was properly devoted to the purpose for which it was appropriated. It is largely a matter of assuming the attitude of a buyer, about to purchase the property, who would not only take into consideration the loss of the area of the condemned strip, but also would assume that such strip was being reasonably and properly used for the purposes of the condemnor. *Ranck v. City of Cedar Rapids*, 134 Iowa 563, and cases cited therein.

Coming to the specific matter of the removal of lateral support by a municipality in the construction of a street, it has been quite generally held that this is a proper matter to take into consideration in assessing damages in condemnation proceedings. *Cabot v. Kingman*, 166 Mass. 403 (44 N. E. 344); *Hartshorn v. County of Worcester*, 113 Mass. 111; *Morgan v. City of Albert Lea*, 129 Minn. 59 (151 N. W. 532); *McCullough v. St. Paul, M. & M. R. Co.*, 52 Minn. 12 (53 N. W. 802); *Dyer v. City of St. Paul*, 27 Minn. 457 (8 N. W. 272); *In re Rapid Transit R. Com.*, 197 N. Y. 81 (90 N. E. 456); *Susswein v. Bradley Contr. Co.*, 184 App. Div. 852 (172 N. Y. Supp. 652).

Counsel for appellant cites *Doud v. Mason City & Ft. D. R. Co.*, supra, to the proposition that the city could not be held liable for injury resulting to appellee's property outside of the tract actually appropriated. In the cited case, the matter was tried after the railroad had been constructed. The landowner

was permitted to show that his land outside the right of way
had been entered upon by the railroad company, and soil wrong-
fully removed in connection with the construction of the rail-
road.  We held that this could not be considered, because this
constituted a trespass, and that damages resulting from an *im-
proper* construction, or for a trespass upon land outside of the
right of way, could not be considered in the condemnation pro-
ceedings, but we expressly held in said case that:

"The damages which can be considered in such a proceed-
ing are those which will result from a proper use of the land
appropriated in the construction and operation of the railway."

We held, also, that there was no authority for assessing
damages for an anticipated trespass.  This, however, is alto-
gether different from assessing damages for a necessary injury
to the remaining tract by reason of the withdrawal of lateral
support in the proper construction of the street.  There is no
claim of any trespass in the instant case, but only that the
proper construction of the street upon the condemned tract will
necessarily withdraw the lateral support from the remaining
portion of the tract, and thereby depreciate its value.  This, we
think, was a proper matter for consideration in determining the
damages.

Both parties cite us to the case of *Talcott Bros. v. City of
Des Moines,* 134 Iowa 113.  This action was brought to recover
for damages occasioned by the removal of lateral support in
bringing an *existing* street to a grade which had been estab-
lished by the city.  The city, in so constructing the street, left
an excavation which caused a part of the land of the plaintiff
to slide into the street.  We discussed the question of the lia-
bility of a city to a property owner for the construction of an
excavation in an *existing* street, to bring said street to a grade
first established therein by the city.  In considering said matter,
we cited with approval *Callender v. Marsh,* 1 Pick. (Mass.) 418,
and said:

"At the time [of condemnation], the landowner knew, of
course, the purpose for which the city was acquiring the land,
and that sooner or later the making of improvements would be
entered upon.  If his land was situated on a hilltop or in a
ravine, he knew that, when improvements came to be made,

there would be necessity for excavations and fills, and he must be held to have taken this into consideration when he made the dedication, or fixed the price on sale, or made his claim for damages on condemnation proceedings, as the case may have been.''

Applying this rule to the instant case, it must be clear, we think, that the appellee was bound to make his claim for damages in the condemnation proceedings with a view to the purpose for which the city was acquiring the land, and with the knowledge that, sooner or later, improvements would be undertaken. He was bound to know that, when the improvement is made, by the opening or construction of the street in question, there will be, of necessity, an excavation which will withdraw the lateral support from his property; and unless he took this into consideration, and made his claim for damages therefor in the condemnation proceedings, he could not thereafter claim such damages for the original construction of the street.

The statute before referred to, providing for damages for the alteration of an existing grade in an established street, has no application to a situation like that in the instant case, involving an original condemnation of property for the purpose of establishing a street. The instant case presents no situation of a change in an established grade. It presents the simple case of the taking of property for the original establishment of a street; and if, from the topography of the property, it is obvious and apparent that the proper use of the condemned strip for a street will necessarily result in the removal of lateral support from the remaining property of the appellee, and necessarily cause injury thereto, then, under the doctrine of the *Talcott* case, not only is the same a proper matter to consider in estimating damages for said original taking, but unless claim was made therefor in said proceeding, it would be deemed to be waived by the property owner.

In the instant case, it was a proper question for the jury, in estimating the damages to the appellee's tract for the original establishment of this street, to take into consideration the injury that would result to the remaining tract by the necessary withdrawal of lateral support in the proper original construction of the street.

A liability for damages by the improper construction of the street, or by a trespass outside of the right of way, could not be considered as elements of damage in a condemnation proceeding; but none such are involved, under the record in this case.

II.   Upon the direct examination of a witness in behalf of the appellee, the following occurred:

"Q.   How much, in your judgment, was that land reasonably worth per acre at the time this cut was made?   A.   According to what I paid for mine at the time, it would be worth about $2,500 an acre."

3.  WITNESSES:
    examination:
    nonresponsive
    answer.

Appellant moved to strike the answer as not responsive.

No objection was interposed to the question, and the motion to strike the answer was solely on the ground that it was not responsive.   Such motion was not available to the appellant, for the reason that no one but the party conducting the examination of a witness can be heard to object to an answer on the ground that it is not responsive.   *In re Will of Dunahugh*, 130 Iowa 692; *Christensen v. Thompson*, 123 Iowa 717.

The following also occurred:

"Q.   You may state to the jury the basis on which you fix your estimate of $2,000 to $2,500.   A.   Partly from the appearance of the place."

4.  EVIDENCE:
    opinion: facts
    as basis.

After the answer, appellant's counsel objected as immaterial and irrelevant, and asked to have the answer stricken for that reason.   The court's ruling was adverse to the appellant.   There is no reversible error here. No objection was interposed until after the answer had been given, and in any event, the objection was not well taken.   The witness had a right to detail the matters which he took into consideration as furnishing the basis for his estimate of the damages.

The examination proceeded as follows:

"Q.   Well, what else?   A.   The buildings will eventually have to be moved."

Appellant's counsel then interposed the same objection. The objection was not interposed until after the question had been answered, and the general objection that it was immaterial and irrelevant was not well taken.

III.   Upon the examination of the witness Hammer, the following occurred:

"Q.   How much is that land worth less, after the street was put through there, than it was before, by reason of the street?  A.   Well, it is hard for me to answer that question, unless I can answer it my way.  You do not allow me to do that.  There would be a damage of at least $3,000.  Q.  $3,000?  A.  Yes."

*5. TRIAL: reception of evidence: waiver of defect.*

Appellant's counsel then moved to strike the evidence as incompetent, irrelevant, and immaterial; and the motion was overruled.

The first question was improper.  The opinion of a witness as to the amount of damages a party has sustained, is not admissible.  He may state the facts and items showing the extent and manner of the injury, and the jury is to make the proper deductions therefrom, and determine the amount of the damages sustained; but counsel for the appellant was evidently content with the questions as propounded, and made no objections thereto.  The motion to strike, as incompetent, irrelevant, and immaterial, was not timely, nor was it sufficiently specific. There was no prejudicial error here of which appellant can now complain.

IV.   Complaint is made that the court erred in permitting the introduction of testimony on the part of the witness Potts, concerning the cost of building a retaining wall.  The witness testified that he had examined the premises in question, and, without objection, was permitted to testify that the only way to remedy the condition caused by the excavation along the south line of the appellee's property, would be to place a retaining wall 335 feet in length.  He was then asked, "Do you know what would be the probable expense of such a retaining wall?"  This was objected to as incompetent, irrelevant, and immaterial.  The objection was overruled, and the witness answered that he had figured the expense at about $900.  The following then occurred:

*6. TRIAL: reception of evidence: failure to object.*

"Q.   We are figuring on what would have been the expense at that time.  A.   I figured we could not put it up for anything less than $900, and I want you to understand that I don't care about the job at that."

It will be observed that no objection was interposed to the last question, and no motion made to strike the answer. The only question to which objection was made merely called for the knowledge of the witness as to the probable expense of a retaining wall. The question should have been answered by "yes" or "no." There was no motion to strike the answer that was given, nor was there any objection to the next succeeding question, or motion to strike the answer thereto.

From this record, we do not think the appellant is in a position to claim error. Whether or not the appellee had any right, over proper and timely objections, to prove, as an element of damage, the probable expense of the construction of a retaining wall of some kind of material, is not properly before us. We find no error upon the foregoing record requiring a reversal.

V. Without objection, the witness Potts was permitted to testify in regard to the character of the soil on appellee's property, and that he had had a large experience in the matter of cuts and embankments of the kind in question, and in taking care of the same. He was asked what, in his opinion, would be the result of a cut of ten or twelve feet upon the soil north of the street. This question was objected to as incompetent, irrelevant, and immaterial; and the objection being overruled, the witness testified that he had had experience in terracing down sandy soil like that, and that in the winter time it freezes, and in the spring thaws out, the sand gives way, and lets the soil down. Appellant's counsel then states, "We object to that, and move to strike it out." This was overruled, and the following took place:

7. EMINENT DO- MAIN: compensation: present and future damages.

"Q. How far, in your judgment, would this cave extend? (Appellant's counsel objected as incompetent, irrelevant, and immaterial. Overruled.) A. The soil you mean? Q. How far would it wash off? You said it would wash off. How far would it go back? A. In the winter time, it would freeze, and in the summer, when it thawed out, it would cave away. I have had experience, and I know. Q. How far would it go back before it quit? A. It would just keep caving off. For illustration, I have got a lot right across the street from me, which is black soil. They put retaining walls on it, but this lot just

caved off three or four feet on this lot, and dropped down into the street, and they hauled it away right there,—black soil. Q. We are assuming, Mr. Potts, that the excavation is made out there. Suppose it is made out there ten feet deep. The question is whether or not this slide or washout might be expected to extend back as far as Guenther's house? A. Yes, sir.''

Appellant insists that there was a reversible error in the admission of this testimony. Upon this record, it will be observed that the final answers of the witness were made without any objection thereto, and appellant cannot predicate error upon the answers that were received without objection. In any event, it was proper to show all the damages which the appellee would sustain by the proper construction of the street, such damages including those present and reasonably certain to happen in the future. *Wissmath Pkg. Co. v. Mississippi R. P. Co.,* supra. Appellee was not seeking to recover for damages by reason of any improper construction of the street, or for any trespass on his property outside of the right of way, or for the taking of any of his property outside of the condemned strip; but he had a right to show the conditions that would exist when the strip was taken and subjected in a proper manner to the use for which it was condemned. The damages that necessarily, proximately, and consequentially resulted from such use of the property were proper to be considered.

We do not think the evidence in the instant case went beyond the proper limit of matters that may be considered in determining the actual damage to the property by reason of the taking of the condemned portion and the construction of the proposed improvement; and in any event, the appellant is in no position to complain.

VI. In instructing the jury, the court said:

"In determining the value of the land in question before and after the taking of the strip of land in controversy for said 8. EMINENT DO- street, you may take into consideration the fact MAIN: compen- as to whether or not there were trees, shrubbery, sation: trees and shrubbery. or plants upon said 25-foot strip of land so taken by the city, whether the same were damaged or destroyed, and the reasonable market value thereof.''

The court properly told the jury the true measure of dam-

ages; and the question at this point is whether or not it was error to tell the jury that, in determining the damages, they could take into consideration the value of the trees, shrubbery, or plants upon the condemned strip which were damaged or destroyed by the taking. Instructions must be read as a whole, and the court gave to the jury the true and proper measure of damages.

In determining the difference in value between the tract of land before taking and its value after taking, it was certainly proper for the jury to take into consideration the use that was then being made of the portion of the land that was condemned. In *Ranck v. City of Cedar Rapids*, supra, it appeared that several witnesses were permitted to testify as to the value of the improvements on the lot, to show that the premises had been fitted up with certain buildings, and that profitable business had been carried on there for a long time. Exactly as in the instant case, it was contended that inquiry into the details tended to confuse the jury on the true measure of damages. We said:

"While there is some confusion in the holdings of the courts along this line, it seems to be fairly well established that proof of such facts is admissible—not as affording a measure of recovery, but as tending to disclose the real character and condition of the property and support the estimates of value given by the witnesses."

The value of trees growing on the land has been considered a proper element to take into consideration in such a case. *Adkins v. Smith*, 94 Iowa 758; *Walker v. City of Sedalia*, 74 Mo. App. 70; *Parks v. Wisconsin Cent. R. Co.*, 33 Wis. 413.

The value of growing crops lost by the condemnation is proper to be considered. *Lance v. Chicago, M. & St. P. R. Co.*, 57 Iowa 636; *Haislip v. Wilmington & W. R. Co.*, 102 N. C. 376 (8 S. E. 926); *Gilmore v. Pittsburgh, V. & C. R. Co.*, 104 Pa. 275; *Seattle & M. R. Co. v. Scheike*, 3 Wash. 625 (29 Pac. 217, 30 Pac. 503).

The clause of the instruction complained of was not erroneous, in view of the other instructions of the court, which clearly and explicitly gave the jury the true measure of damages in the case.

VII.   Complaint is also made of a portion of Instruction 6, in which the jury was told that they might take into consideration the use to which the strip of land was to be put, the nature and extent of the excavations or fillings, if any, the nature of the soil, and the conditions and surroundings, as shown by the evidence, respecting said premises as they were changed or affected by the taking of the strip of land.

9. **EMINENT DOMAIN: compensation: present and future conditions of property.**

We have already discussed the question of the right of the appellee to compensation for the injury caused by the taking of the land and the proper, necessary, and reasonable construction of the street upon the land so taken.   This instruction correctly told the jury that, in determining the damages, they had a right to take into consideration the condition and surroundings of appellee's property after the street had been opened upon the condemned strip.   As heretofore pointed out, it was proper for the jury to take into consideration in this proceeding the condition of appellee's property, not only after the strip in question had been subtracted therefrom, but also after said strip had been properly appropriated to the particular use for which it was taken.   *Ranck v. City of Cedar Rapids*, supra; *Talcott Bros. v. City of Des Moines*, supra.

VIII.   The owner of the land testified that the south side of his place "lies good for city lots," and testified as to what would be the value of the ordinary sized city lots located on said tract.   The objection that was interposed to this evidence was that it was incompetent, irrelevant, and immaterial.   It is argued that the competency of the witness was not shown, to pass upon the issue of value, or that he had given any consideration to the subject of platting the tract for division into city lots. The question now argued was not involved in the objection made to the evidence upon the trial.   The measure of damages was in no way based upon the value of the property as city lots.   It was a six-acre tract, and its value was testified to by the witnesses for the appellant and the appellee as such six-acre tract, before and after the taking.   The appellee had a right to show the location of his property, and its immediate availability for other purposes than those to which he was at the time devoting it.   This was not

10. **EMINENT DOMAIN: compensation: availability for other purposes.**

remote or speculative. Both parties offered their proof on the proper measure of damages, which was correctly submitted to the jury by the court.

We find no error in regard to this matter warranting a reversal of the case.

IX. It is contended that the verdict is without sufficient support in the evidence. Counsel's deductions are made by ascertaining the value of one acre, according to the evidence of the witnesses, and taking one fourth thereof—there being approximately one fourth of an acre taken for the street—as the value of the tract condemned.

As heretofore pointed out, this is not the correct measure of damages in such a case; and the verdict of the jury, in view of the entire record, has substantial support in the evidence.

Since we find no error justifying our interference, it follows that the judgment of the district court must be, and the same is,— *Affirmed.*

STEVENS, C. J., EVANS and ARTHUR, JJ., concur. ·