O. W. BARTON, Appellee, v. FRED J. BOIE et al., Appellants.

**FENCES:** Partition Fences—Drainage Right of Way—Power of
1  **Fence Viewers.** Lands taken for a right of way for a public drainage ditch (Ch. 2-A, Tit. X., Sup. Code, 1913) are simply burdened with an easement—a right in the public to use the land, unhampered and unimpeded, for drainage purposes. Subject to this right, the owner (and he is still the owner) may use the land as he pleases. The mere fact, therefore, that a division line between two landowners lies within the drainage *right of way* but outside the actual channel does not oust the power of the fence viewers to order the erection and maintenance of partition fences on such division line.

*Appeal from Pottawattamie District Court at Avoca.*—HON. THOMAS ARTHUR, Judge.

WEDNESDAY, APRIL 7, 1915.

IN proceedings before the fence viewers of Valley Township in Pottawattamie County, the board refused an order for the erection, cost and maintenance of a partition fence between plaintiff, Barton, and defendant, Boie.

Plaintiff Barton appealed to the district court and, in a hearing before that tribunal, the action of the board was

reversed and the partition fence was established.  Defendant appeals.—*Affirmed.*

*Fremont Benjamin* and *Verne Benjamin,* for appellants.

*I. D. Shuttleworth* and *Preston & Dillinger,* for appellee.

DEEMER, C. J.—The case was tried on an agreed statement of facts from which we extract the following:

Some years ago a drainage district was established, known as Nishnabotna District No. 5.  Included within the district, for the purpose of straightening its course, was the Nishnabotna River, a rather large stream which theretofore had been wholly on plaintiff's land.  Plaintiff and defendant owned adjoining tracts of land in section five in the township already mentioned, which land was included in the district.

1. FENCES: partition fences: drainage right of way: power of fence viewers.

The engineer on the project, which was finally established, contemplated a change of the river course to the division line between plaintiff's and defendant's land, and recommended that a strip one hundred and thirty-two feet in width be taken for the new river channel.  Compensation was awarded to the owners and when the ditch was finally constructed, which was some sixty feet in width, it was wholly upon the plaintiff's land, leaving an acre or more within the right of way which plaintiff could not reach, save by crossing the ditch.

The right of way extended some three or four feet over onto defendant's land for a part of the distance between the two tracts; but no part of the drainage ditch runs over it. Plaintiff's land is west of that belonging to the defendant, and the ditch itself is more than forty feet west of the boundary line.  It will thus be noticed that the drainage scheme included but three or four feet of the defendant's west line; that the remainder was taken wholly from plaintiff's land; that the ditch proper is wholly upon plaintiff's land and some-

thing like forty feet from defendant's land. The proceeding was to establish a fence on the true boundary or government line, so that plaintiff might have a fence on the east side of his tract, and could use all of his land, both east and west of the ditch, for stock purposes. The township trustees were of opinion that they could not establish a partition fence at any place save on the government line, and that, as the land at this point had all been taken as part of the drainage scheme, they could not establish the fence over the land for the reason that it would or might interfere with the drainage, and that they had no jurisdiction of the matter because the county or the drainage district in legal effect owned the land upon which it was proposed to erect the fence.

The district court reversed the finding and made an order that the fence be constructed. The appeal is from this ruling.

Of course, a partition fence must be established upon the true line, between two tracts of land; and defendant contends that as the land on this line between the parties has already been appropriated by the county or drainage district, no order can or should be made establishing a fence at that point. This depends upon the nature of the title held by the county or by the drainage district, and its power over the same after the establishment of the district. Secs. 1989-a1 and 1989-a5 of the Code Supplement, 1913, provide that the board of supervisors may establish drainage districts for the purpose of straightening natural water courses upon plans recommended by an engineer, and may award damages to any owner whose lands are affected thereby. Sec. 1989-a6 contemplates the taking of a right of way through and over lands and for an award of damages to the owner when this is done; and Sec. 1989-a21 provides that:

"Whenever any levee or drainage district shall have been established and the improvement constructed as in this act provided, the same shall at all times be under the control and supervision of the board of supervisors and it shall be

the duty of the board to keep the same in repair and for that purpose they may cause the same to be enlarged, reopened, deepened, widened, straightened or lengthened for a better outlet, and they may change or enlarge the same or cause all or any part thereof to be converted into a closed drain when considered for the best interests of the public rights affected thereby. The cost of such repairs or change shall be paid by the board from the drainage fund of said levee or drainage district, or by assessing and levying the cost of such change or repair upon the lands in the same proportion that the original expenses and cost of construction were levied and assessed, except where additional right of way is required or additional lands affected thereby, in either of which cases the board shall proceed as hereinbefore provided; provided, however, that if the repair is made necessary by the act or negligence of the owner of any land through which such improvement is constructed or by the act, or the negligence of his agent or employe, or if the same is filled and obstructed by the cattle, hogs or other stock of such owner, employe or agent, then the cost thereof shall be assessed and levied against the lands of such owner alone.''

It will be observed that the taking is for a public purpose and that an easement is created upon the land included in the right of way for the purpose, in this case, of establishing a new channel for the river and to take care of the excavated material, subsequent erosion of the stream, and other matters necessary to the maintenance of the new channel for the stream. Original boundary lines were not eliminated, and continued use of the land taken by live stock is recognized if not expressly authorized by the section of the statute last quoted. There is no provision for fencing a drainage ditch or the right of way taken for the new channel of a natural stream.

An adjoining owner might fence his side of the right of way but he could not compel the other to contribute to the

expense thereof under the partition fence statute, because it is not, or may not be, on the true government line. And if one fenced his side at his own expense, the others would have the advantage of that fence as well as the use of the right of way and a way to reach and to have the advantage of access to a natural stream which he did not theretofore have.

But it is said that the erection of the fence in this case will interfere with the use of the right of way and take from the board of supervisors the control which the statute gives it of using the right of way for drainage purposes. This is largely theory, for there is absolutely no proof in this case that the fence will be the slightest hindrance to the improve-ment. What the rule might be, were the true boundary upon a berm, or near the channel of the ditch, we have no occasion now to determine. Nor need we say that the board of super-visors *may* not, if the fence is built and emergency demands, order the removal of the fence. It is enough to say that this record discloses affirmatively that the fence, if built upon the true line, will not in any way interfere with the easement over the land for drainage purposes.

Of course, the board of supervisors has the right to go upon the land and to use it for drainage purposes in the con-summation of plans already established; but the statutes contemplate that the owners of the land from which the right of way was taken retain ownership and the right to use the property in any way not inconsistent with the carrying out of the plans for the drainage district. The quite universal rule, where an easement over land is created, is that the owner retains the right to use it in any way not inconsistent with the easement nor interfering therewith. *Henry v. R. R. Co.*, 2 Iowa 288; *Conklin v. R. R. Co.*, 28 N. E. (Mass.) 143; *Plank Road Co. v. Braden*, 51 Am. St. 759. That this right of way is a mere easement, see *Stuhr v. Butterfield*, 151 Iowa 736.

No proper claim is or was made in the court below, or in this court, that the county or the drainage district, one or

both, were necessary parties to this proceeding; hence, we do not consider that proposition. It follows that the boundary line between plaintiff's and defendant's land was in no manner changed by the drainage proceedings; that plaintiff is entitled to have a partition fence established on that line unless it in some manner appears that to do so would defeat, hinder or impede the rights which the county or drainage district has in the right of way; and that, as there is no showing whatever that the establishment of the fence would in any way interfere with paramount rights for drainage purposes, the trial court was right in ordering the establishment of the fence. Its judgment is therefore—*Affirmed.*

GAYNOR, EVANS and SALINGER, JJ., concur.

PRESTON, J., took no part.