John W. Wheatley, Appellee, v. City of Fairfield, Appellant.

No. 41039.

February 9, 1932.

1188

Ralph H. Munro, City Solicitor, and Starr & Jordan, for appellant.

Thoma & Thoma, for appellee.

WAGNER, C. J.—Before the trial of the consolidated causes, it was agreed that the court should rule on objections to testimony: that is, that the trial should proceed in accordance with the method of trial applicable to ordinary actions.

The appellant in its brief and argument makes no claim that the court erred in the equitable action, and under the Rules of this court, any error claimed to have been made by the court which is not argued in the argument in chief shall be deemed to have been waived. We will, therefore, proceed at once to determine the matters urged for reversal in the condemnation proceeding.

We will first visualize some of the facts necessary for a full understanding of the case presented. The city of Fairfield purchased two tracts of real estate, through which ran a watercourse, across which they constructed a dam so as to form a reservoir for waterworks purposes. This same watercourse runs through the plaintiff's farm. The real estate purchased by the city lies directly south of a highway which runs approximately east and west; to the north of said highway is the plaintiff's farm, consisting of 357 acres. This farm lies without the corpo-

rate limits of the city, but the dwelling house thereon is located just one and one-half miles from the public square, in the city. The source of the watercourse is somewhere in the lands north of the plaintiff's farm, and said watercourse runs across plaintiff's farm to the dam constructed by the city. The dam, as constructed by the city, backs the water onto the plaintiff's farm. The plaintiff and the city were unable to agree upon the damage to plaintiff's farm, and therefore this condemnation proceeding was begun. The part condemned is described as follows:

"Beginning at a point 2067.3 feet West and 296 feet South of the Southeast corner of Section Nineteen (19) in Township Seventy-two (72) north of Range Nine (9) West, thence running north 20 degrees West 1167.1 feet, thence North 29 degrees and 22 minutes East 1325.16 feet, thence North 58 degrees and 8 minutes West 135.36 feet, thence South 33 degrees and 19 minutes West 1799.5 feet, thence South 26 degrees and 34 minutes East 1062.2 feet, thence North 70 degrees and 30 minutes East 396.8 feet to the place of beginning, containing 18.43 acres."

Said condemned portion of the farm is irregular in shape, resembling an elbow, which is wider at the south end than at the northern part thereof. We do not find in the record the exact distance from the northern boundary of the farm to the north portion of the tract condemned, but from the plat introduced in evidence, it is apparent that said distance is about 30 or 40 rods. The water at the south boundary of plaintiff's land stands in said reservoir at a depth of about eight feet, and extends at a gradually decreasing depth upward along the watercourse over the condemned tract, and for a while after hard rains, the water extends beyond the boundaries of the portion condemned. Plaintiff's farm is well adapted for farming and stock-raising purposes, and he usually keeps thereon from 8 to 10 head of horses, about 150 hogs, about 60 head of cattle, and from 75 to 125 sheep. Of the land east of the watercourse, 104 acres are used for agricultural purposes, and pasture land lies between the 104 acres and the reservoir. Plaintiff's dwelling house, also a tenant house, and his farm buildings all lie to the west of the reservoir; of his land lying west of the reservoir, approximately 45 acres are tilled. The land west of the reser-

voir, other than the cultivated portion of 45 acres and what is occupied by the dwelling houses, farm buildings, yards, barn lots and feed lots, is used for pasturage purposes. It will be noted that a portion of plaintiff's pasture land lies both to the east and to the west of the reservoir. Before the condemnation, the fences and gates were so constructed that, by the opening of gates, all of the pasture land could be thrown together and furnish access to all pasture lands from the stock barns to stock without any interference with the cultivated land. Plaintiff's cattle barns, silo, corn cribs and feed lots are located near the center of the farm. One of these barns is 64 x 96 and the other 40 x 60.

Prior to 1924, the plaintiff constructed a concrete bridge in the bed of the watercourse east of his barns as a part of a roadway on the farm, enabling him to haul directly from the cattle barns, silo and corn cribs to the cultivated land on the east part of the farm and directly from that cultivated land to the aforesaid buildings. This bridge also afforded a passageway for his stock to cross the watercourse. This concrete bridge is now covered by water in the reservoir, and the plaintiff has no way of access from his farm buildings to the cultivated land on the east portion of his farm, other than going south upon his land which lies west of the reservoir to the public highway, then easterly upon the highway to a gate or gates leading therefrom to the cultivated land. There is evidence tending to show that, because of the steep banks of the watercourse to the north of the condemned portion of the farm, and because of a steep incline of the land, it would be impractical to construct a bridge across that portion of the watercourse. It is thus shown that the route necessarily traveled in getting from the barns to the cultivated portion of the farm on the east side, or from the latter to the former, is much longer and causes the plaintiff great inconvenience. It is also true that the cattle, when pasturing east of the reservoir, must be driven north beyond the reservoir, in order to get to the cattle barns, and vice versa.

There was also a spring with running water, which had been piped into a trough, and this spring was in the portion of the farm used for pasturage purposes. This spring and trough are now in the condemned portion of the land and completely submerged by the water in the reservoir.

It will thus be observed that the means of access in getting from one portion of plaintiff's farm to the other has been materially hindered and he is deprived of the use of the spring hereinbefore mentioned. The farm is virtually cut into two pieces by the reservoir of water.

As hereinbefore stated, the case was tried to the court, without a jury, and the court found that the damage is in the sum of $14,000.00, with interest thereon as provided by law from the 1st day of April, 1925. It is conceded by the appellant, in his argument, that plaintiff's damage has been suffered since said date, and no complaint is made because of the allowance of interest from that date.

In condemnation proceedings where the land lies in a body and the whole is used as one farm, the measure of damages is the difference in value of the entire tract or farm immediately before the taking of the condemned portion and its value immediately after the taking of the condemned portion, taking into consideration the purposes for which the condemned tract is to be used, and disregarding benefits. See Kosters v. Sioux County, 195 Iowa 214; Kukkuk v. City of Des Moines, 193 Iowa 444. Many other cases could be cited upon this proposition. The parties to this litigation do not disagree upon this general rule; their disagreement is as to some of the elements which expert witnesses for the plaintiff on the question of value were allowed to take into consideration, in fixing the value of the farm after the taking of the 18.43 acre tract for waterworks purposes, and also in permitting the plaintiff to show on cross-examination of the defendant's value witnesses that they did not take into consideration one or more of said elements.

Over the objection of appellant, the plaintiff was allowed to show, as an element of damage to the farm, the fact that the remaining lands along and adjoining the reservoir—that portion of the farm condemned—by reason of percolation became wet and boggy, so that there was danger of his stock's becoming mired in the mud. In fact, it was shown that several of his cattle had become so mired in the mud and died, and that they had to be extricated by means of horse power. This evidence was received only for the purpose of showing the damage to the owner in the use of the remainder of his land for farming and stock-raising purposes, because of the use of the 18.43-acre

patch for the purpose for which it was condemned. In other words the plaintiff did not and could not ask in this action as an element of damages the value of the cattle. Damage, or decrease in the value of the remaining land, caused by percolation of the water from the reservoir, is a proper element to be taken into consideration in fixing the value of the farm, after the taking of the condemned portion for the purposes for which it was condemned. See Healey v. Citizens Gas & Electric Co., 199 Iowa 82. There is no merit in appellant's complaint at this point.

It is shown by the evidence that it has been the policy of the city to license or give people the right to fish upon the reservoir and fish and hunt along the shores thereof, within the boundaries of the condemned portion, and that the city had, by contract, so licensed or authorized members of the Isaac Walton Club of Fairfield to use the reservoir and shores thereof for said purposes. This reservoir for the waterworks furnishes a suitable place for said purposes. Over the objection of the appellant the plaintiff was permitted to show the detrimental effect of hunting and shooting in the vicinity of live stock. We have held in condemnation cases that in assessing damages in favor of the landowner, the trier of the facts may properly take into consideration any and all uses which the party taking the land by condemnation may rightfully make of the land condemned, and also the injury, *annoyance, danger and inconvenience,* if any, necessarily resulting to the use, enjoyment and value of the entire tract from which such land has been taken. See Lewis v. Omaha & Council Bluffs Suburban Railway Company, 158 Iowa 137; Bennett v. City of Marion, 106 Iowa 628; Evans v. Iowa Southern Utilities Company, 205 Iowa 283. As said in the Evans case, where one of the witnesses testified that one of the elements which he considered in fixing the value of the farm after the taking of a portion by condemnation was danger to stock:

"It is true that whatever makes the farm in question a less desirable farm does affect its market value * * *."

The plaintiff's farm is well adapted for stock-raising purposes, and anything done or permitted by the city on the reservoir of water or along its shore line within the boundaries of the condemned portion which decreases the desirability of the

farm for such purpose does affect its market value. There is no merit in appellant's complaint at this point.

Before the construction of the dam by the city, and the condemnation of the 18.43-acre tract for waterworks purposes, the water in the watercourse ran unmolested through the plaintiff's farm. One physician, as a witness for the plaintiff, testified:

"Water standing in a reservoir such as there now, there would be serious danger of contaminating the water in the use of the barns and feed lots. The contamination and danger of infection is greater from a small lake than from a running stream."

Another physician called as a witness by the plaintiff testified:

"Q. I want to ask you as to your opinion upon whether or not the use of those cattle barns and feed lots, as you know them to have been used, if you do so know, by Mr. Wheatley in the operation of his farm, would contaminate, or there would be danger of contamination of the City water supply there in that water reservoir, as it now exists. A. My best judgment would tell me it would, yes. Q. Is there greater or less danger of contamination from the wash of surface water from barns and feed lots, the drainage from barns or feed lots, into a reservoir or still body of water, than there is in a running stream? A. I would say there would be, yes. Q. Does it offer greater opportunity for the contamination to be concealed from the sunlight and the motion over the ground itself in a reservoir than it does in an open, running stream? A. Yes, I would say there would."

The appellant complains because, over its objection, the court allowed the value witnesses for the plaintiff, in fixing the value of the farm after the taking of the condemned portion for waterworks purposes, to take into consideration the fact that the plaintiff would or might be limited in the future use of his barns and feed lots because of danger of contamination therefrom to the water supply congregated in the reservoir for the use of the City, and because the court allowed the plaintiff to show, by cross-examination of the value witnesses for the defendant, that they did not take said element into consideration

in their estimate of the value of the farm after the taking of the condemned portion for city waterworks purposes.

It is the repeated pronouncement of this court that in condemnation cases, the damages to the real estate from which the condemned portion is taken for a public improvement, when assessed, are assessed once for all, and are conclusively presumed to include all damages, present and future, which may be sustained by the owner by reason of the proper use of the condemned portion for the purpose for which it is condemned. See Wissmath Packing Company v. Mississippi River Power Company, 179 Iowa 1309; Hilcman v. Chicago Great Western Railway Company, 113 Iowa 591; Pillings v. Pottawattamie County, 188 Iowa 567; Kukkuk v. City of Des Moines, 193 Iowa 444. In Hileman v. Chicago Great Western Railway Company, 113 Iowa 591, at 593, we said:

"It is the almost universal rule that in condemnation proceedings the damages are to be assessed once for all, and, when once assessed, 'they include all the injuries which may result for all time to come from the construction and operation of the road (in the instant case, of the waterworks system) in a reasonable and proper manner.' "

Appropriate quotations could be made from the other cited cases.

Before the taking of a portion of plaintiff's farm for city waterworks purposes, the watercourse ran clear through the plaintiff's farm from north to south and from there in the same general direction, until being emptied into a creek some distance beyond the City of Fairfield. Before condemnation, each owner of land through which a watercourse runs has the rights of a riparian owner. The rights of a riparian owner are necessarily modified by a license or grant by said owner, or by appropriation under condemnation proceedings. See Gehlen Brothers v. Knorr, 101 Iowa 700; Strobel v. Kerr Salt Company, (N. Y.) 79 Am. St. Rep. 643. Unless prevented by contract, grant or condemnation, every riparian owner is entitled to the natural flow of the water of a running stream through or along his land *in its accustomed or natural channel,* undiminished in quantity and unimpaired in quality, except as may be occasioned by the reasonable use of the stream by other like proprietors

(see Gehlen Brothers v. Knorr, 101 Iowa 700; 40 Cyc. 559-561, and cases there cited) ; and every riparian owner is entitled to have the stream continue to flow through his lands *in its accustomed channel and natural volume,* without any obstruction of the channel or detention of the waters by other owners, injurious to him; and he can be deprived of this right only by his own grant or license, actual or implied, or by condemnation for public uses under the power of eminent domain. See 40 Cyc. 568-569, and cases there cited. Whether or not a pollution of the waters of a stream *in its natural channel* is an actionable injury to a lower riparian proprietor depends upon whether it is the result of such a reasonable use of the stream as the upper owner is entitled to make, or of an unreasonable use in excess of his rights. See Ferguson v. Firmenich Manufacturing Company, 77 Iowa 576; People v. Elk River Mill and Lumber Co. (Cal.), 48 Am. St. Rep. 121; Barton v. Union Cattle Co. (Neb.), 44 N. W. 454. In People v. Elk River Mill and Lumber Co. (Cal.), 48 Am. St. Rep. 121, the defendants were enjoined from maintaining a manure pile and hogpen near the banks of a running stream so that the drainage therefrom was directly into the running stream. The court said:

"While as to lower riparian owners, the defendant is entitled to a reasonable use of the water, he has no right to pollute the stream by putting such matter *directly* into it. * * * So, if the hogpen and the cowstable were at a reasonable distance from the river, the fact that the winter rains washed some impurities into the stream would be something of which lower riparian proprietors could not complain. The acts enjoined are equivalent to actually putting the polluting material *directly* into the water." (Writer's italics.)

Under Section 6141, Code, 1927, for the purpose of protecting the water of such waterworks from pollution, the jurisdiction of the city shall extend over the stream or source from which the water is taken for five miles above the point from which it is taken. But it is apparent that what may be a reasonable use by a riparian owner for drainage purposes of a watercourse through which a stream flows in its natural channel and natural volume of water, may be grossly unreasonable when the flow of the water in its natural channel has been ob-

structed or impeded, as is done by the city in the instant case, and what was formerly a stream converted into a pond or reservoir and brought much nearer the sources of pollution, to wit, the barns, buildings and feed lots, than was the original location of the stream of running water. Since the city has acquired the right to use the 18.43-acre tract for city waterworks purposes, the plaintiff may not so use the buildings and improvements upon his farm as to *directly* cast pollution into the reservoir and thereby interfere with, or depreciate in value, the use of the condemned tract for the purposes for which it is to be used by the city. It must be borne in mind that by reason of the condemnation of the tract and the construction of the dam and system, the narrow stream of water formerly flowing in its natural course and volume through the plaintiff's farm has been converted into an expanse of still water in excess of 400 feet in width, which brings it into close proximity to the two large barns situated upon the plaintiff's farm. The part condemned and over which the water will stand takes a portion of his feed lot. It is thus apparent that it is reasonably certain that, if his barns and feed lot are used in the future, as they have been in the past, refuse and offensive matter, causing pollution, will be *directly* cast into the pond or reservoir of water. This was not the condition which existed in connection with his use of the farm prior to the construction of the dam and condemnation of the tract. It must be borne in mind that this waterworks system was constructed by the city to furnish water for the use of all the residents of the city of Fairfield. The city cannot by condemnation so change the watercourse as herein mentioned and thereby bring its water supply so close to defendant's buildings and feed lots as that there will in all reasonable probability be a discharge of offensive matter therefrom, *directly* therein, and thereby create a reasonable certainty that the plaintiff will be limited or prevented in the future from using his buildings and improvements as he has been in the past, without having said fact or facts taken into consideration in fixing the value of the farm after the appropriation by condemnation of the 18.43-acre tract for city waterworks purposes. In determining the amount of damages, it is proper for the trier of the facts to take into consideration all pertinent facts pertaining to the condition of the farm, both before and after the con-

demnation and construction of the entire works as a city water-works system. See Kosters v. Sioux County, 195 Iowa 214. It is the city and not the plaintiff which must bear the damage to the plaintiff by reason of this limitation of the use of plaintiff's premises, which it is apparent is reasonably certain to occur by reason of the condemnation of the tract and the use thereof for city waterworks purposes. The objections of the defendant-city to the evidence relative to the danger of limitation in the use of the remainder of his premises by reason of the aforesaid matters were properly overruled.

The last contention of the appellant is that the damage of $14,000.00 is excessive. Six witnesses for the plaintiff, who are thoroughly familiar with the values of real estate in that vicinity, placed a value on plaintiff's farm, before the taking of the condemned portion, at from $195.00 to $200.00 per acre. They placed the decrease in value, by reason of the condemnation and construction of the waterworks system at a much greater amount than that found by the court. It is true that defendant's witnesses on value fixed the amount of the damage at a much lesser amount. The condemnation case was tried, as it should have been, as an ordinary action. It was tried to the court, without a jury. It must be conceded that the injury to the plaintiff's farm is quite substantial and permanent. The amount of damages to be awarded in cases of this kind is of necessity largely a matter of approximation, and unless the same be shown to be so extravagant as to be wholly unfair and unreasonable, this court has repeatedly refused to interfere with the verdict of a jury or the findings of the trial court when a jury has been waived. The trial court fixed the amount of damages as he viewed it under the testimony disclosed by the record. We have read the record with care and discover no proper grounds for our interference with the amount of damage as fixed by the trial court. The amount is amply supported by the evidence. We cannot say that the amount is so excessive as to warrant interference by us. See Besco v. Mahaska County, 200 Iowa 684; Longstreet v. Town of Sharon, 200 Iowa 723; Kosters v. Sioux County, 195 Iowa 214; Bracken v. City of Albia, 194 Iowa 596.

We have given careful consideration to all of the complaints made by the appellant, and find nothing that would warrant

us in reversing the judgments of the trial court, and the same are hereby affirmed.—Affirmed.

EVANS, MORLING, KINDIG, and GRIMM, JJ., concur.