# In the Iowa Supreme Court

No. 23–0958

Submitted December 17, 2024—Filed January 17, 2025

**Marabelle Ann 'Le' Abbas; Marabelle Abbas Trust; Matthew Abbas; Harland Duane Abbas Trust; Patricia F. Hanson; Patricia Hanson; Ten-K Farms, Inc.; Bruce D. Reid; Lynette Meyer;** and **Roy and Neva Stover Trust,**

Appellants,

vs.

**Franklin County Board of Supervisors, Mike Nolke, Gary McVicker,** and **Chris Vanness** as trustees of **Drainage District Number 48,**

Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Franklin County, Rustin Davenport, judge.

A county board of supervisors seeks further review of a court of appeals decision affirming a district court's damages award to landowners in a drainage district dispute. **Decision of Court of Appeals Affirmed in Part and Vacated in Part; District Court Judgment Reversed and Case Remanded.**

Oxley, J., delivered the opinion of the court, in which all justices joined.

Robert W. Goodwin (argued) of Goodwin Law Office, P.C., Ames, for appellants.

George A. Cady III (argued) of Cady & Rosenberg Law Firm, P.L.C., Hampton, for appellees.

**Oxley, Justice.**

This appeal involves damages awards related to a drainage ditch project undertaken in 2017 to deepen and widen the drainage ditch known as Drainage District No. 48 (DD48) in Franklin County. The district court concluded that the Franklin County Board of Supervisors (the Board) had not abandoned the original right-of-way easement granted in 1906 when the drainage district was first established, so the right-of-way damages stemming from reconstruction of the open ditch in 2017 were allowed only to the extent the easement was expanded beyond its prior boundaries. It also concluded that the affected landowners were entitled to severance damages for the diminution in value of their remaining property caused by the inability to traverse the open ditch with farming equipment. Finally, the district court ordered the owners of one of the properties to deed to the Board 4.01 acres that had become landlocked and inaccessible by the 2017 ditch reconstruction and for which the Board was required to pay the full value of the property as part of the severance damage award.

Both sides appealed. The court of appeals affirmed the damages awards but reversed and remanded the order to convey the 4.01-acre parcel for further proceedings. We granted the Board's application for further review to determine whether the landowners were entitled to severance damages. As explained more fully below, we conclude that—with the exception of the 4.01-acre parcel that first became landlocked in 2017—they were not. We therefore reverse the district court's ruling and remand the case for entry of a damages award consistent with the appraisal committee's initial calculation of damages.

**I. Factual Background and Proceedings.**

**A. General Drainage District Principles.** County boards of supervisors are statutorily authorized to establish drainage districts to construct and maintain a drainage system on identified areas of agricultural land within the county as a "public benefit." *Hicks v. Franklin Cnty. Auditor*, 514 N.W.2d 431, 435 (Iowa 1994) ("The legislature has declared that 'drainage of surface waters from agricultural lands and all other lands or the protection of such lands from overflow shall be presumed to be a public benefit . . . .' " (omission in original) (quoting Iowa Code § 468.2 (1989))); *see also* Iowa Code § 468.1 (2017) (authorizing a county board of supervisors "to establish a drainage district or districts . . . in such county, whenever the same will be of public utility or conducive to the public health, convenience or welfare"). "Once a drainage district has been established, the improvement remains under the control and supervision of the board of supervisors or a board of trustees, and the board has the duty to keep the improvement in repair." *Hicks*, 514 N.W.2d at 435. The drainage district assesses the costs of constructing and maintaining the drainage systems against those properties that benefit from the system. *See* Iowa Code § 468.11 ("The engineer [appointed by the board] shall examine the lands described in the petition and any other lands which would be benefited by said improvement or necessary in carrying out the same. The engineer shall locate and survey such ditches . . . and other improvements as will be necessary, practicable, and feasible in carrying out the purposes of the petition and which will be of public benefit or utility, or conducive to public health, convenience, or welfare."). And it is required to compensate property owners whose land is taken for the drainage system. *See id.* § 468.26 ("At the time fixed for hearing and after the filing of the report of the appraisers, the board shall examine said report, and

may hear evidence thereon, both for and against each claim for damages and compensation, and shall determine the amount of damages and compensation due each claimant, and may affirm, increase, or diminish the amount awarded by the appraisers."). Drainage records are maintained in the county auditor's office. *See id.* §§ 468.27 ("Upon the establishment of the district, the petitioners shall file with the county auditor the survey and report or permanent survey, plat, and profile, as set forth in sections 468.172 and 468.173."), .126(8) ("If the drainage records on file in the auditor's office for a particular district do not define specifically the land taken for right-of-way for drainage purposes, the board may at any time upon its own motion employ a land surveyor to make a survey and report of the district and to actually define the right-of-way taken for drainage purposes.").

There are two general types of damages associated with a drainage district: right-of-way damages and severance damages. Right-of-way damages compensate a property owner for the value of the land taken for the construction of the drainage ditch. *See id.* §§ 468.22(2) (requiring appointment of appraisers "to assess the value of the right-of-way required for open ditches or other improvements"), .25 (requiring appraisers to "place a separate valuation upon the acreage of each owner taken for right-of-way for open ditches or for settling basins, as shown by plat of engineer"); *see also Johnston v. Drainage Dist. No. 80 of Palo Alto Cnty.*, 168 N.W. 886, 887 (Iowa 1918) ("Plaintiff was entitled to payment for the fair market value of the land included within the drainage right of way . . . ."). Severance damages compensate a property owner for the decrease in value, if any, to his remaining property caused by having a drainage ditch run through it. *See Harris v. Bd. of Trs. of Green Bay Levee & Drainage Dist. No. 2*, 59 N.W.2d 234, 237 (Iowa 1953) (explaining that a property owner's

reimbursement from a drainage district compensates not only for the fair market value of the property taken but "also includes the reduced value, if any, of the remaining farm lands, and other damages caused by such severance"); *see also* 11A Eugene McQuillin, *The Law of Municipal Corporations* § 32:94, Westlaw (3d ed. updated July 2024) ("When only a part of the land is legally taken by condemnation proceedings, the value of the land taken and the decreased value, if any, of the remaining part at that time constitute the measure of damages. These damages are termed severance damages." (footnote omitted)).

**B. Parties.** The plaintiffs include three sets of individuals and related entities that own tracts of land involved in this drainage district matter: the Abbas property, owned by Marabelle Ann 'Le' Abbas, Marabelle Abbas Trust, Matthew Abbas, and Harland Duane Abbas Trust (collectively "Abbas"); the Hanson property, owned by Patricia F. Hanson, Patricia Hanson, and Ten-K Farms, Inc. (collectively "Hanson"); and property owned by Bruce C. Reid, Lynette Meyer, and the Roy and Neva Stover Trust (collectively "Reid-Meyer").

The Board, through the named individual defendants, serves as the trustees for DD48, which controls a five-mile-long drainage ditch that services 2,440 acres of farmland in Franklin County. We addressed repairs made to the same drainage ditch in 1990. *See Hicks*, 514 N.W.2d at 434. The current dispute involves a subsequent project undertaken in 2017 when the 1990 repairs proved unsuccessful. Given the parties' arguments and the district court's ruling, we briefly recount the history of the drainage district.

**C. History of DD48.** The Board formally established Morgan Township Drainage District No. 1 (DD1) in 1906 and excavated an existing natural land depression into a five-mile-long open drainage ditch to increase the land available for farming in the area. *Id.* At the time, one-half to two-thirds of the

area was too wet to farm. The open drainage ditch was deep enough and steep enough that farm equipment could not cross it without a bridge. *Id.*

When the ditch was initially proposed, the Franklin County auditor distributed notices to impacted landowners directing them to file damages claims related to the partial taking of their land by the open drainage ditch. The Board appointed an appraisal committee to assess impacted landowners' damages claims and awarded a total of $2,714.00 to the fourteen landowners who filed damages claims as "damages on account of the location and construction of a ditch . . . upon and across certain lands owned by such persons."

In 1915, landowners in DD1 petitioned to establish a new drainage district with a main tile line and tile laterals. Based on the appointed engineer's conclusion that DD1 was "inadequate, insufficient, and out of repair," the Board authorized further construction in 1916. A bulkhead was built approximately three miles down the ditch, and the open ditch below the bulkhead was cleaned out and left largely intact. Tile was installed along the main line of the open drainage ditch in the three-mile stretch above the bulkhead, and thirty-seven lateral tiles were constructed off the main line. The ditch above the tile was also backfilled to a specified grade, resulting in a shallow surface waterway above the tile line. The construction was completed in 1917, and DD1 was renumbered DD48.

Between 1917 and the late 1930s, landowners partially filled the waterway north of the bulkhead with dirt left in spoil piles when the ditch was originally dug. By 1937, farmers were using the land above the tile line for crops, and the Board returned this area of the land to the tax levy rolls.

Fast forward to 1990, when DD48 undertook repairs "to recreate the shallower ditch above the tile line similar to the condition that it would have been

following the 1917 construction of the tile line." These repairs widened the previous footprint of the drainage ditch. Damages claims related to the 1990 construction project were litigated in *Hicks v. Franklin County Auditor*, 514 N.W.2d 431.[1]

**D. The 2017 Reconstruction Underlying the Current Dispute.** In the years that followed, the 1990 construction project proved to be unsuccessful. The shallow ditch added in 1990 caused the tile lines to be closer to the surface of the ground, providing less protection from the weather and from heavy farm equipment. This, coupled with the aging tile that had been in place for seventy years, caused the tile lines to break in places, and the area was wetter than it had been before the 1990 repairs.

In 2017, the Board gave up on the tile line. In its place, the Board decided to reconstruct an open ditch similar to what was originally constructed in 1906. The 2017 open-ditch project, like that in 1906, was impassible for farm equipment, requiring the adjoining land to be farmed in smaller, less efficient fields than had been possible since the late 1930s.

The Board appointed an appraisal committee pursuant to Iowa Code section 468.24 to assess damage claims asserted by affected landowners, including the plaintiffs. The appraisal committee included one engineer (Lee Gallentine) and two disinterested landowners within the county (Don Latham and Larry Sailer). The plaintiffs sought right-of-way damages related to the entire area occupied by the open ditch. But the appraisal committee limited its assessment to the additional land occupied by the expanded ditch beyond what DD48 "already ha[d] a historical right to." The appraisal committee valued the

---

[1]Reid-Meyer made a claim for damages related to the 1990 project and was a plaintiff in the *Hicks* litigation. Neither the Hanson family nor the Abbas family made claims related to the 1990 work.

additional acres based on each property's average CSR2 rating (corn suitability rating index) multiplied by $110.94 per CSR2 point based on recent sales of farmland in the area. The appraisal committee recommended that the plaintiffs receive right-of-way damages as follows:

Abbas Property

- Claimed 7.94 acres total
- Allowed 1.80 acres as additional right-of-way
- CSR2 rating of 69.34 at $110.94/point
- Total right-of-way damages: $13,846.64

Hanson Property

- Claimed 3.96 acres total
- Allowed 1.46 acres as additional right-of-way
- CSR2 rating of 80.71 at $110.94/point
- Total right-of-way damages: $13,072.79

Reid-Meyer Property

- Claimed 10.77 acres total
- Allowed 1.32 acres as additional right-of-way
- CSR2 rating of 77.18 at $110.94/point
- Total right-of-way damages: $11,302.30

The appraisal committee also considered the plaintiffs' claims for severance damages, which were premised on their claim that the ditch made farming the rest of their land less efficient, reducing its value. After a detailed review of how each property had been used in the past, the appraisal committee did not recommend severance damages for the Abbas or Hanson properties, noting that their usage patterns had not been detrimentally affected and that the land had not been viewed as crossable prior to reconstruction of the ditch. For the Reid-Meyer property, the appraisal committee determined that 4.01 acres of property that had previously been farmed was no longer accessible and had become landlocked by the reconstructed ditch. The appraisal committee thus recommended that plaintiff Reid-Meyer receive severance damages for that

4.01-acre parcel using the CSR2 valuation method it used for the right-of-way damages. The appraisal committee assessed severance damages for the Reid-Meyer property at $36,915.26 (4.01 acres × average CSR2 rating of 82.98 × $110.94). On February 7, 2022, the Board approved and adopted the appraisal committee's recommendations.

**E. Judicial Proceedings.** On March 16, the plaintiffs appealed the Board's final action to the district court pursuant to Iowa Code section 468.83. The plaintiffs introduced evidence from their expert, Ted R. Frandson, who is an experienced principal and real estate appraiser. Frandson calculated damages by performing a fair-market-value appraisal of each farm before and after reconstruction of the ditch. His calculations were premised on the assumptions that there was no prior drainage district easement for the Abbas and Hanson properties and that the Reid-Meyer property was subject to an easement only for a shallow, farmable ditch. The plaintiffs also put on evidence that severing farmland with an uncrossable ditch generally reduces its fair market value by 10% because it takes more time and work to farm smaller, odd-shaped fields than long, straight ones. Matt Abbas supported the claimed inefficiencies by documenting the extra work required to farm around the ditch on his property.

Following the two-day bench trial, the district court concluded that the plaintiffs were entitled to additional damages. In reaching its decision, the district court concluded that DD48 did not dissolve DD1 and that DD48 was not abandoned between 1917 and 1990, including when the Board returned the property to the tax rolls in 1937. Thus, the plaintiffs were only entitled to right-of-way damages for the area covered by the reconstructed open ditch beyond its original border, consistent with the appraisal committee's conclusion. Nonetheless, the district court concluded that the plaintiffs were also entitled to

severance damages for the reduction in value of the plaintiffs' remaining farmland, reflecting the farming inefficiencies caused by the reconstructed open ditch. In calculating the amount of damages for the severance, the district court found the testimony from the appraisal committee engineer, Gallentine, more credible than the plaintiffs' expert, Frandson, as to property valuation. So, it used the appraisal committee's CSR2-based valuations to value the entirety of each property before the ditch reconstruction, and it used the plaintiffs' expert's February 2022 per-acre valuations to value each property—less the additional acres taken by the expansion of the right-of-way—after the reconstruction. It awarded the difference in damages:

- $91,189.00 for the Abbas property
- $162,003.00 for the Hanson property
- $41,541.80 for the Reid-Meyer property

In its ruling on posttrial motions, the district court directed plaintiff Reid-Meyer to convey by warranty deed the severed 4.01 acres for which DD48 was required to pay severance damages.

Both parties appealed, and we transferred to the court of appeals. The court of appeals affirmed the district court's conclusion that the plaintiffs were entitled to both right-of-way and severance damages and its calculation of the awards. But it vacated the district court's conveyance order, remanding for additional proceedings. We granted further review to determine whether the plaintiffs are entitled to severance damages.

**II. Analysis.**

This appeal raises three issues: (1) did DD48 have an easement on the plaintiffs' property prior to the 2017 reconstruction; (2) if so, were the plaintiffs entitled to severance damages; and (3) is Reid-Meyer required to convey title to the 4.01-acre parcel to DD48 based on the severance payment?

**A. Standard of Review.** This drainage district action was tried as an ordinary proceeding, and we review for the correction of errors at law. *See* Iowa Code § 468.91 ("Appeals from orders or actions of the board fixing the amount of compensation for lands taken for right-of-way or the amount of damages to which any claimant is entitled shall be tried as ordinary proceedings."); *Chi. Cent. & Pac. R.R. v. Calhoun Cnty. Bd. of Supervisors*, 816 N.W.2d 367, 370 (Iowa 2012). The district court's findings of facts are binding on this court if supported by substantial evidence.

**B. Existence of Drainage Easement and Extent of Additional Right-of-Way Damages.** The plaintiffs challenge the district court's conclusion that DD48 had an existing easement covering the original 1906 open ditch when it reconstructed it in 2017. This matters because "[o]nce a drainage district has been established, the district 'is deemed to have acquired by permanent easement all right-of-way for drainage district ditches, tile lines, settling basins and other improvements.'" *Hicks*, 514 N.W.2d at 440 (quoting Iowa Code § 468.27 (1989)). Having found an easement, the district court denied the plaintiffs' claims to right-of-way damages associated with the land covered by the original open ditch, even though the plaintiffs (and their predecessors) had been using the land since at least the 1930s after the ditch was covered back in. Reid-Meyer claimed it lost a total of 9.45 acres, Abbas claimed a total of 6.14 acres, and Hanson claimed a total of 2.50 acres.

The plaintiffs challenge the existence of the easement on a number of fronts. First, they claim that DD48 "discontinued and abandoned" DD1 in 1916 when the open drainage ditch was replaced by a tile line and transformed into a surface waterway above the tile line. They support their argument by reference to the 1916 survey, which only provided for a tile system covered by dirt. The

plaintiffs further argue that even if DD48 did not supplant DD1, both were abandoned at least by 1939, when the ditch was completely filled in and farmable to the point of being returned to the property tax rolls.

There is a presumption that an easement continues to exist unless abandonment is proven by clear and satisfactory evidence. *Allamakee County v. Collins Tr.,* 599 N.W.2d 448, 451 (Iowa 1999) (holding that a county did not abandon its road right-of-way even though it only maintained the traveled portion of the road). "Nonuse is not enough to establish abandonment, unless coupled with affirmative evidence of a clear determination to abandon. Obstructions, encroachments, or the failure to keep [an easement] in repair do not necessarily result in abandonment." *Id.* (citation omitted); *see also Town of Marne v. Goeken,* 147 N.W.2d 218, 222–24 (Iowa 1966) (finding no affirmative evidence of abandonment of alley even though area in question had been encroached upon by defendant's garage).

We rejected similar arguments in *Hicks* when we addressed the 1990 repair of the same drainage district. *See* 514 N.W.2d at 440–41. There, landowners alleged that they were entitled to compensation "not only for the expansion of the drainage easement, but also for the taking of all of the land for the drainage right-of-way" because "the waterway easement had been filled in and farmed for approximately fifty years" and DD48 took no action to repair or restore the surface waterway during that time period. *Id.* We rejected the landowners' arguments based on theories of prescriptive easement, adverse possession, equitable estoppel, and laches, recognizing that DD48 had a permanent drainage easement on the land and "the [landowners'] evidence falls far short of proving the elements of these defenses with respect to the original

easement." *Id.* at 441. We therefore limited the landowners' damages to those resulting from the expansion of that easement beyond its original boundary. *Id.*

Here, the plaintiffs' analogous abandonment theory fails as well. A century ago, we addressed a similar situation in *Johnston v. Drainage District No. 80 of Palo Alto County*, where a "proposed new drainage district included a portion of the right of way of an old district known as drainage district No. 16." 168 N.W. at 887. The landowner there, like the landowners here, was not entitled to right-of-way compensation to the extent such damages had already been paid with respect to the old drainage district. *Id.* Because "the right of way for the improvement in question include[s] a portion of the right of way of a former drainage improvement, for which the owner [or his predecessor] had received compensation, no additional sum should be allowed for the land thus taken and occupied thereby." *Id.* Thus, creation of DD48 did not eliminate the prior right-of-way created by DD1—for which the plaintiffs' predecessors were paid. Rather, as we said in *Hicks*, DD1 was merely "renumbered . . . [DD]48." 514 N.W.2d at 434.

Nor do the early farmers' actions of using the spoil piles to fill in the ditch and make it farmable change the nature of the easement held by DD48. Although "the owner retains the right to use the property in any way not inconsistent with the carrying out of the plans of the drainage district," *Johnston,* 168 N.W. at 888, the drainage district remains "under the control and supervision of the board of supervisors," *id.*; *see also* Iowa Code § 468.126. During the period between 1937 and 2017, when the tiles were removed, covering the ditch and farming over it were undertaken by landowners—not DD48, the holder of the easement. *See Hicks*, 514 N.W.2d at 441 (rejecting landowners' argument "that the county should be stopped from reclaiming the right-of-way because they took no action

to repair or restore the surface waterway for almost fifty years"). "It is the actions and intent of the holder of the easement, not the claimant, that determines whether abandonment has occurred." *Allamakee County*, 599 N.W.2d at 453.

We also reject the plaintiffs' argument that DD48 did not have an easement over their respective properties because permanent right-of-way easements for drainage districts were not statutorily authorized until Iowa Code section 468.27 was enacted in 1985, 1985 Iowa Acts ch. 163, § 1 (codified as amended at Iowa Code § 468.27 (2017)), long after DD48 was put in place. This argument is foreclosed by our cases predating 1985 recognizing that a drainage district's statutory right to control and maintain an established drainage district amounts to an easement. *See Johnston*, 168 N.W. at 888 (collecting cases recognizing that "land taken for a ditch right of way is simply burdened with an easement, and . . . that the owner retains the right to use the property in any way not inconsistent with the carrying out of the plans of the drainage district"); *Barton v. Boie*, 151 N.W. 1064, 1065 (Iowa 1915) ("It will be observed that the taking [by a drainage district] is for a public purpose, and that an easement is created upon the land included in the right of way for the purpose, in this case, of establishing a new channel for the river . . . ."); *Stuhr v. Butterfield*, 130 N.W. 897, 897 (Iowa 1911) (describing the rights obtained by a county board of supervisors when a drainage district was established under section 1989-a1 of the 1907 Iowa Code Supplement and explaining that "[t]he nature and object of the easement the public thereby appropriates is much as others within the district like that of a highway").

For the foregoing reasons, we agree with the district court that the easement had not been abandoned, and the plaintiffs were entitled to right-

of-way damages only to the extent the 2017 open ditch reconstruction expanded DD48's right of way beyond its initial boundaries.

**C. Severance Damages.** Despite concluding that DD48 held a permanent right-of-way easement for drainage district purposes for which damages had been paid in 1906, the district court nonetheless found that the plaintiffs were entitled to severance damages related to the diminution in value of their remaining farmland caused by reconstruction of the open ditch in 2017. Noting that we allowed additional damages following the 1990 repairs to DD48 in *Hicks* and that the appraisal committee here considered (but then rejected) the plaintiffs' severance damages claims based on their historical use of their property, the district court concluded that proof of legal abandonment was not a prerequisite to an additional severance award. The district court noted that farming practices had changed significantly and that the plaintiffs were no longer able to farm the property as they had for nearly eighty years or even cross over the ditch as they had been able to since the shallow ditch repairs were made in 1990.

In affirming the district court's award, the court of appeals considered the severance damages under a substantial-evidence standard, concluding that the damages award fell within the permissible range of the evidence. But whether severance damages are even allowed is a threshold legal question that must be decided before considering whether the amount was adequately supported by the evidence.

When DD1 was created in 1906, affected landowners made claims for damages, and the board of supervisors followed the statutory mechanism for assessing and paying the damages. The "statutory procedures that are provided for the original establishment of a drainage district" are "a special form of

eminent domain that the legislature has provided for drainage-district takings."
*Peterson v. Bd. of Trs. of Drainage Dist. No. 5*, 625 N.W.2d 707, 709–10
(Iowa 2001) (en banc). The statutory provisions are analogous to condemnation
proceedings and require the drainage district to compensate landowners for the
associated damages. *Id.* at 710 ("[T]he Legislature, in authorizing the
condemnation of a right of way for a drainage ditch, has provided a definite and
complete method for the adjus[t]ment and adjudication of damages occasioned
by the taking and the compensation to the owners of the land through which
[the ditch] extended . . . ." (omission in original) (quoting *Taylor v. Drainage Dist.
No. 56*, 148 N.W. 1040, 1043 (Iowa 1914))).

> It is the repeated pronouncement of this court that in
> condemnation cases the damages to the real estate, from which the
> condemned portion is taken for a public improvement, when
> assessed, are assessed once for all, and are conclusively presumed
> to include all damages, present and future, which may be sustained
> by the owner by reason of the proper use of the condemned portion
> for the purpose for which it is condemned.

*Wheatley v. City of Fairfield*, 240 N.W. 628, 632 (Iowa 1932) (collecting cases).
This pronouncement applies equally to drainage district damages assessments.
*See Peterson*, 625 N.W.2d at 711 ("The principle announced in *Taylor* is
consistent with principles that this court has applied to eminent-domain takings
in other situations." (citing *Hammer v. Ida County*, 231 N.W.2d 896, 900 (Iowa
1975) (condemnation damages are to be assessed once and for all and once
assessed include all injuries that may result for all time); *Wheatley*, 240 N.W. at
632 (same))).

In *Peterson v. Board of Trustees of Drainage District No. 5*, we held that a
drainage district lacked the authority to award additional damages seven years
after completing the statutory proceeding for assessing damages under Iowa
Code section 468.26. *See* 625 N.W.2d at 708. After receiving compensation for

land taken for a new drainage district in 1991, Charles Gunn learned that his property no longer qualified as wetland property under a federal grant program, causing him to be sanctioned by the United States Department of Agriculture. *Id.* at 709. He sought reimbursement from the drainage district for the resulting $26,600 cost to him, which the board of trustees allowed over the opposition of other property owners within the drainage district. *Id.* In reviewing the other landowners' petition for certiorari, we concluded that the finality principle from condemnation proceedings defeated the board's authority to award additional damages to Gunn even though it "may work a hardship in those situations where changes in the water flow produce unanticipated consequential damage to adjoining property owners." *Id.* at 711.

Similar principles must be applied here. When DD1 paid damages to property owners for the original drainage ditch in 1906, the severance damages, i.e., the diminution in value of the adjacent property severed by the open ditch, "are conclusively presumed to include all damages, present and future, which may by sustained by the owner by reason of the proper use of the condemned portion for the purpose for which it is condemned." *Hammer*, 231 N.W.2d at 900. The plaintiffs attempt to distinguish the rule from *Hammer v. Ida County* on the basis that the original landowners were not paid severance damages in 1906 based on testimony offered by Donald Etler, a consulting agricultural engineer for Franklin County, that the records do not indicate severance damages were considered. Considered or not, the finality principles of condemnation law conclusively presume that severance damages were included. *See Peterson*, 625 N.W.2d at 711.

DD1 was not abandoned, and the compensation paid to the original owners is conclusively presumed to have included the diminution in value of the

landowner's remaining property caused by construction of the open ditch. The facts that the initial payments were made a century ago and that farming methods have changed significantly do not entitle the plaintiffs to additional severance damage payments. The district court's conclusion that the 1906 easement right-of-way had not been abandoned effectively removed its authority to award severance damages. The plaintiffs' expert, Frandson, recognized as much when he testified that his calculations were premised on there being no right-of-way easement on the Abbas and Hanson properties and the easement for the Reid-Meyer property being limited to a shallow but traversable ditch related to the 1990 repairs. He admitted during cross-examination that if an easement for a deep ditch "was established [in 1906] and was in place today," the severance would have occurred in 1906, and "you would only be talking about damages for acquisition for additional right-of-way if they increased the . . . width of the ditch."

We note one caveat. The appraisal committee concluded that 4.01 acres of the Reid-Meyer property became landlocked by the 2017 open ditch reconstruction and made inaccessible. The Board agreed and adopted its assessment of damages at $36,915.26, the parcel's full fair market value. The Board changed course at trial, arguing that no additional compensation was owed because the land had already been severed in 1906. On appeal, the Board argues that we should either affirm the district court's order that Reid-Meyer must convey the 4.01 acres upon the Board's payment of the severance award or that we should reverse the damages award because the land was already severed in 1906. At no point in any of the proceedings did the Board offer an alternative valuation for the 4.01 acres. Yet, the Board confirmed during oral argument that the parcel was not landlocked by the original 1906 open ditch, so

the 2017 open ditch reconstruction was, in fact, a new severance of that parcel. Given the Board's concession, we affirm the district court's award of severance damages for that discrete piece of property.

For the foregoing reasons, we conclude that the district court erred by awarding the plaintiffs any severance damages based on the diminution in value of their remaining land outside of the easement right-of-way for the drainage ditch, subject to the caveat for the 4.01 acres.

To summarize the damages awards, the plaintiffs are entitled to right-of-way damages limited to the value of the land taken for the expanded right-of-way by the 2017 open ditch reconstruction but not to any severance damages, except for the 4.01-acre Reid-Meyer parcel. In its calculation of damages, the district court adopted the appraisal committee's use of the CSR2 valuation method to value each property prior to the 2017 open ditch reconstruction. In essence, the district court agreed with the appraisal committee's calculation with respect to the right-of-way damages, which was accepted by the Board. The district court also agreed with the appraisal committee's valuation of the 4.01-acre landlocked parcel, premised on the same CSR2 methodology. Given these factfindings made by the district court, no new findings are needed, and the district court on remand can enter an award consistent with the appraisal committee's award.

**D. Conveyance by Warranty Deed.** Following the district court's ruling, the Board filed a motion to enlarge, asking—without citing any legal authority—the district court to clarify that DD48 was entitled to a warranty deed from Reid-Meyer conveying the 4.01-acre parcel upon the Board's payment of the $36,915.26 compensation award. This was the first mention of transferring title to any of the property. In its postruling order, the district agreed that the

parcel should be conveyed by warranty deed upon payment of the compensation award, likewise without citing any legal authority. The court of appeals reversed that order and remanded for further proceedings given the district court's lack of cited legal authority to support the conveyance order.

When a drainage district seeks to make repairs or improvements that expand an existing right-of-way, as done here by DD48, it can "acquire . . . the necessary lands *or easements*" "by contract or conveyance" or "in the manner provided in the original establishment of the district," or it can exercise "the power of eminent domain as provided for in chapter 6B." Iowa Code § 468.126(6) (emphasis added); *see also Peterson*, 625 N.W.2d at 709 (describing the "statutory procedures that are provided for the original establishment of a drainage district" as an alternative procedure to eminent domain). Here, the Board used the statutory procedures provided when a drainage district is originally established, which "is a special form of eminent domain that the legislature has provided for drainage-district takings." *Peterson*, 625 N.W.2d at 710. Under Iowa Code chapter 468 procedures, the drainage district obtains a permanent easement and is required to pay the resulting damages. *See* Iowa Code §§ 468.26, .27. While the Board may be required to compensate a landowner for damages beyond the land taken for the right-of-way easement in the form of severance damages, nothing in chapter 468 requires the landowner to convey the property for which it was compensated to the board. *See Taylor*, 148 N.W. at 1043 ("[T]he Legislature, in authorizing the condemnation of a right of way for a drainage ditch, has provided a definite and complete method for the adjustment and adjudication of damages occasioned by the taking and the compensation to the owners of the land through which [the ditch] extended . . . .").

Having chosen to proceed under the alternative statutory procedures to expand its easement in exchange for paying damages, the Board is not entitled to conveyance of the severed property even if the damages award compensated the landowner for the full value of the affected property. As previously noted, the Board has never challenged the amount of the damages valuation on the basis that it overstated the damages associated with landlocking the 4.01-acre parcel.

For the foregoing reasons, the Board is not entitled to a deed of the 4.01-acre parcel.

**III. Conclusion.**

The district court's order is reversed, and the case is remanded for entry of a damages award consistent with the appraisal committee's award.

**Decision of Court of Appeals Affirmed in Part and Vacated in Part; District Court Judgment Reversed and Case Remanded.**